333 F.3d 972
 Jerome Anthony ALFORD, Plaintiff-Appellant,
v.
Joi HANER, a Washington State Patrol Officer; Jane Doe Haner, his wife; Gerald Devenpeck, Sgt., Washington State Patrol; Jane Doe Devenpeck, his wife, Defendants-Appellees.
 No. 01-35141.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted June 14, 2002.
 Filed June 23, 2003.
 
 COPYRIGHT MATERIAL OMITTED R. Stuart Phillips, Poulsbo, WA, for the plaintiff-appellant.
 Christine O. Gregoire, Attorney General, Eric A. Mentzer, Assistant Attorney General, Olympia, WA, for the defendants-appellees.
 Appeal from the United States District Court for the Western District of Washington; Robert J. Bryan, District Judge, Presiding. D.C. No. CV-99-05586-RJB.
 Before BROWNING, B. FLETCHER, and GOULD, Circuit Judges.
 Opinion by Judge BROWNING; Dissent by Judge GOULD.
 OPINION
 BROWNING, Circuit Judge:
 
 
 1
 Tony Alford spent the night in jail for tape recording a traffic stop. Since taping police officers during the performance of their public duties is not illegal under the Washington Privacy Act, the charge was dismissed by a state court.
 
 
 2
 Alford then filed suit under 42 U.S.C. § 1983 alleging that his arrest, incarceration and prosecution violated his Fourth Amendment right to be free from unreasonable seizure, and pursued state law claims for unlawful arrest and imprisonment. Defendants claimed they were entitled to qualified immunity and had probable cause for the arrest. The jury was instructed that state law clearly established at the time of the incident did not bar the type of recording for which Alford was arrested. Nevertheless, the jury found for the defendants and the district court denied Alford's motion for a new trial. Alford appeals. We reverse and remand.
 
 I. Facts & Procedural History
 
 3
 While driving to his night job, Alford noticed a disabled car on the shoulder of a highway. The area was dark and deserted and he pulled over to offer assistance. After helping the motorists jack up their car and giving them a flashlight to use, he began walking back to his car.
 
 
 4
 Defendant Joi Haner, a Washington State Trooper, driving in the opposite direction, had observed the disabled vehicle and Alford's car pulling in behind it. Haner turned around at the first opportunity.
 
 
 5
 When Haner arrived, he saw Alford walking back toward his own car. Alford told Haner that the people in the car had a flat tire and that he had given them a needed flashlight. Alford then drove off and Haner went to check on the occupants of the stranded vehicle.
 
 
 6
 The motorists told Haner that they believed Alford was a police officer, in part because his car had "wig-wag" headlights (headlights that flash alternately). Because Haner was concerned that Alford was pretending to be a police officer, he called his supervisor, Sergeant Devenpeck, and drove off in pursuit of Alford. After pulling Alford over, Haner noticed that Alford's license plate was nearly unreadable because of a tinted license plate cover. Haner also saw that Alford had an amateur radio broadcasting the communications of the Kitsap County's Sheriff's Office, a microphone attached to the radio, a portable police scanner, and handcuffs.
 
 
 7
 Haner asked Alford about the wig-wag headlights and Alford responded that they were part of an alarm system that had been installed that day. Haner then ordered Alford to demonstrate the wig-wag lights, Alford pressed several buttons, but was unable to activate the lights. Haner noticed that Alford had not pushed a button near Alford's right knee, but did not ask Alford to do so. Later, another officer pushed the button and activated the wig-wag lights.
 
 
 8
 When Sergeant Devenpeck arrived he also asked Alford about the wig-wag lights. While talking with Alford, Devenpeck noticed a tape recorder on the passenger seat recording the traffic stop. Devenpeck told Haner to remove Alford from the car, and informed Alford that he was under arrest for making an illegal tape recording.
 
 
 9
 Alford told the officers that he had previously had a similar problem with the Kitsap County Sheriff and that he had a copy of a Washington Court of Appeals opinion in his glove compartment which held that the state Privacy Act does not apply to police officers performing official duties. The officers did not look at the case. Officer Devenpeck later testified that at the time of the arrest, his belief that he had probable cause to arrest Alford was based solely on his view that Alford had violated the Privacy Act.
 
 
 10
 When Alford was on his way to jail, Devenpeck called Deputy Prosecuting Attorney Mark Lindquist. Devenpeck related what had occurred but did not tell Lindquist about the case Alford had cited. Lindquist advised Devenpeck that there was "clearly probable cause" for arrest, but at trial Lindquist testified that this determination was based primarily on conduct other than the tape recording. Officer Haner also later admitted that the case Alford cited had previously been mentioned in a law enforcement digest that Haner generally read.
 
 
 11
 Alford was jailed for the night on the charge of making an illegal audio recording of a private conversation without knowledge or consent. His car was towed and impounded. A state court judge later dismissed the charge.
 
 
 12
 Alford filed a complaint in federal district court against both the officers and the Washington State Patrol. The Patrol was later dismissed. Alford presented two claims to the jury, a § 1983 claim and a state law claim for unlawful arrest and imprisonment. The jury found for the defendants. The district court denied Alford's motion for a new trial.
 
 II. Motion for a New Trial
 
 13
 We review a district court's ruling on a motion for a new trial for abuse of discretion. U.S. v. 4.0 Acres of Land, 175 F.3d 1133, 1139 (9th Cir.1999). We will reverse the denial of a new trial where, as here, there is no evidence to support the jury's verdict. Hemmings v. Tidyman's Inc., 285 F.3d 1174, 1189-90 (9th Cir.2002); see also De Saracho v. Custom Food Mach. Inc., 206 F.3d 874, 880 (9th Cir.2000).
 
 
 14
 The elements of a section 1983 action are: (1) that "the conduct complained of was committed by a person acting under color of state law;" and (2) that the "conduct deprived a person of rights, privileges, or immunities secured by the Constitution or laws of the United States." Parratt v. Taylor, 451 U.S. 527, 535, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981), overruled on other grounds by Daniels v. Williams, 474 U.S. 327, 106 S.Ct. 662, 88 L.Ed.2d 662 (1986).[1] There is no dispute about the first element: the defendants acted under color of state law.
 
 
 15
 As to the second element, Alford argues that he was deprived of his constitutional right to be free from unreasonable seizure. The Fourth Amendment prohibits arrests without probable cause. See Beck v. Ohio, 379 U.S. 89, 91, 85 S.Ct. 223, 13 L.Ed.2d 142 (1964). Probable cause exists when an officer has "a reasonable belief ... that a crime has been, is being, or is about to be committed." Hopkins v. City of Sierra Vista, 931 F.2d 524, 527 (9th Cir.1991) (internal quotation marks omitted). Tape recording officers conducting a traffic stop is not a crime in Washington. See Wash. Rev.Code § 9.73.030(1)(b) (prohibiting recording of private conversations); State v. Flora, 68 Wash.App. 802, 845 P.2d 1355 (1992) (finding that recording an arrest made by public officers performing functions on public thoroughfares did not violate Washington law because the arrest did not constitute a private conversation). Here, the jury was instructed that an arrest made without probable cause was unreasonable and that, under clearly established law, the conduct for which Alford was arrested was not a violation of the Privacy Act.
 
 
 16
 Since they did not have probable cause to arrest Alford for violating the Privacy Act, defendants now claim on appeal that they had probable cause to arrest Alford for offenses other than tape recording and therefore, Alford's rights were not violated. The defendants cite a 1973 Fifth Circuit case for the proposition that an arrest may be valid, even if there was not probable cause to arrest for the particular crime cited, if there was probable cause to arrest a person for some criminal offense. United States v. Saunders, 476 F.2d 5, 6-7 (5th Cir.1973). Whatever the rule may have been in that Circuit, this is not the test applied in the Ninth Circuit. In this Circuit, "[p]robable cause may still exist for a closely related offense, even if that offense was not invoked by the arresting officer, as long as it involves the same conduct for which the suspect was arrested." Gasho v. United States, 39 F.3d 1420, 1428 n. 6 (9th Cir.1994) (emphasis added), cert. denied sub. nom., Ball v. Gasho, 515 U.S. 1144, 115 S.Ct. 2582, 132 L.Ed.2d 831 (1995).
 
 
 17
 The conduct underlying the crimes suggested by the defendants is unrelated to Alford's tape recording. Any impersonation charge would be based on Alford's use of wig-wag headlights. An obstruction charge would be based on Alford's evasion in allegedly not turning on the wig-wag lights assuming he knew how to do so. These offenses are not closely related to the crime for which defendants arrested Alford, nor was the conduct required for impersonation and obstruction similar to the conduct for which Alford was arrested: tape recording a traffic stop. Since the defendants did not have probable cause to arrest Alford for a violation of the Washington Privacy Act, probable cause to arrest for other unrelated offenses, if present, does not cure the lack of probable cause here. Gasho, 39 F.3d at 1428 n. 6.
 
 
 18
 The defendants argue that a reasonable officer would have believed Alford was violating the state privacy law and therefore they are entitled to qualified immunity. The first question under the two-part inquiry for determining whether the officers are entitled to qualified immunity is whether the "law governing the official's conduct [was] clearly established." Act-Up!/Portland v. Bagley, 988 F.2d 868, 871 (9th Cir.1993). The plaintiff bears the burden of making this showing. Romero v. Kitsap County, 931 F.2d 624, 627 (9th Cir.1991). For qualified immunity purposes, "the contours of the right must be sufficiently clear that at the time the allegedly unlawful act is [under]taken, a reasonable official would understand that what he is doing violates that right;" and "in the light of pre-existing law the unlawfulness must be apparent." Mendoza v. Block, 27 F.3d 1357, 1361 (9th Cir.1994)(quotations omitted). Here, the jury was instructed that Washington law permitting the tape recording of a traffic stop was clearly established: "It is not a violation of the Washington Privacy Act to tape-record a police officer in the performance of an official function on a public thoroughfare. Such conversations are not `private' under the Privacy Act. This rule of law was clearly established by Washington Courts in 1992 in the case of State of Washington v. Flora." Since Alford met his burden of showing that the law was clearly established, "the burden shift[ed] to the defendant[s] to show that a reasonable police officer could have believed, in light of the settled law, that he was not violating a constitutional right" by arresting Alford for illegal tape recording. See Gasho, 39 F.3d at 1438.
 
 
 19
 Under this "objective reasonableness" test, Mendoza, 27 F.3d at 1360, the officers' subjective intent or beliefs are essentially irrelevant; the proper inquiry is whether in light of the facts and circumstances confronting the officers, it was objectively reasonable to conclude that Alford's arrest for a violation of the Privacy Act was supported by probable cause. See Anderson v. Creighton, 483 U.S. 635, 641, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987); Mendoza at 1362. While "[o]ur prior determination that the arrest[] lacked probable cause is not necessarily determinative," Gasho at 1439, the officers must still show "they could have reasonably believed that their actions were lawful," id., that is, under the facts presented the officers could have reasonably believed that there was probable cause to arrest Alford for a violation of the Privacy Act (or a closely related offense). See id. at 1428 n. 6, 1439.[2]
 
 
 20
 Defendants argue they reasonably believed what they were doing was lawful and other officers have thought that surreptitious recording of a traffic stop was illegal. But the defendants mistakenly define "reasonable," focusing on their good faith and subjective beliefs as to the legality of their conduct instead of whether it was objectively reasonable to arrest Alford for a violation of the Privacy Act.[3] The facts presented show that Alford taped a traffic stop on a public thoroughfare. There is no dispute that when the taping occurred the officers were performing a public function. The plain language of the Privacy Act, which the defendants read before arresting Alford, prohibits only the recording of a private conversation, and the law was clearly established that a traffic stop was not a private encounter. The taping was legal. There was no evidence that Flora could be distinguished or that a reasonable officer could think that the arrest was a private conversation.[4] Devenpeck testified that he arrested Alford because Alford had been hiding the tape recorder. But no reasonable officer would think that hiding the tape recorder would create a privacy interest for the officer. In fact, Flora, 845 P.2d at 1356, involved a hidden tape recorder. Under the facts presented, viewed in the light most favorable to the officers, no reasonable officer could think that Alford had recorded a private conversation in violation of the Washington Privacy Act. See id. at 1358 (finding that police officers performing a public function on a public thoroughfare "could not reasonably have considered their words private").
 
 
 21
 Nevertheless, the defendants argue that they made a reasonable mistake of law and therefore are entitled to qualified immunity under Saucier v. Katz, 533 U.S. 194, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001). In Katz, the Supreme Court held that officers who make "reasonable mistakes as to the legality of their actions" can invoke qualified immunity. Id. at 206, 121 S.Ct. 2151. Although Katz was a case involving excessive force, the Court made it clear that the same rationale would apply to an officer's probable cause determination. Id. However, Katz was based on the idea that police officers will sometimes have difficulty drawing fine legal distinctions under exigent circumstances. See id. at 205-06, 121 S.Ct. 2151.
 
 
 22
 The legal distinction the officers were asked to make here was not a difficult one: taping private conversations is illegal, taping a traffic stop is not. Furthermore, this is not a case of exigent circumstances. Alford was in his car with a tape recorder, the officers read the applicable statute, and Alford even offered the officers a copy of the relevant case which he had in his glove compartment. The officers not only failed to read the clear language of statute and incorrectly decided that the traffic stop on a public thoroughfare was a private conversation, they also declined to read the case Alford offered and did not call it to the attention of the prosecuting attorney. Katz is intended to apply with regard to an officer's exercise of discretion rather than his or her faulty grasp of or memory about what the law is. See id. at 205-06, 121 S.Ct. 2151. Because in light of the facts and clearly established law no objectively reasonable officer could have concluded that arresting Alford for taping the traffic stop was permissible, defendants were not entitled to immunity.
 
 III. Conclusion
 
 23
 Defendants arrested Alford for tape recording a public conversation, but the law clearly prohibits only the recording of private conversations. Probable cause to arrest for other crimes does not cure the defendants' violation of Alford's rights. Gasho, 39 F.3d at 1428 n. 6.
 
 
 24
 The facts and the law clearly established that the traffic stop was public. There was no evidence that Alford had violated the Privacy Act or that the encounter was private. No objectively reasonable officer could have concluded that taping an officer during a traffic stop on a public thoroughfare was barred by the Privacy Act.
 
 
 25
 We conclude that on the evidence presented, viewed in the light most favorable to defendants, it was not possible to rule for the defendants. The district court abused its discretion in not granting the motion for a new trial. We reverse and remand to the district court for further proceedings consistent with this decision.
 
 
 26
 REVERSED AND REMANDED.
 
 
 
 Notes:
 
 
 [1]
 The elements of Alford's state law claim were similar. As stated in the jury instructions, Alford had to show that defendants (1) arrested Alford without probable cause; (2) acted under color of law; and (3) proximately caused Alford's injuries. Because these elements are so similar to the § 1983 claim, and we reach the same result for both his state and federal claims, we do not discuss them separately
 
 
 [2]
 We reject the officers' argument that they are entitled to qualified immunity if probable cause could have existed for other, unrelated offenses. As with our earlier determination that the arrest without probable cause violated Alford's rights, probable cause to arrest Alford for other unrelated offenses, if present, does not render his arrest lawful or objectively reasonable for the purpose of allowing the officers to invoke the shield of qualified immunitySee Gasho at 1428 n. 6, 1439. Even if we were not compelled by our precedent to consider only whether probable cause may have existed for closely related offenses based on the same conduct for which Alford was arrested, to hold otherwise would improperly turn the objective reasonableness inquiry into an inquiry into the officers' subjective motivations or beliefs at the time of arrest. See, e.g., Trejo v. Perez, 693 F.2d 482, 486 (5th Cir. 1982) (finding requirement of "objective reasonableness" best vindicated by limiting the probable cause determination for qualified immunity purposes to "sufficiently related offenses" because this limitation incorporates an "objective [reasonableness] standard for avoiding after the fact extrapolation" that "obviates the need for a delicate subjective inquiry"). Because the "closely related offense" doctrine already accounts for the possibility of sham arrests or later extrapolated justifications, and correctly focuses on the objective reasonableness of an arrest, we cannot introduce a further inquiry into the officers' subjective beliefs or motivations at the time of the arrest. It would eviscerate the "objective reasonableness" standard, and the "closely related offense" doctrine, to allow the officers to invoke qualified immunity by claiming reliance on probable cause for other uncharged and unrelated offenses.
 
 
 [3]
 Similarly, the dissent emphasizes the officers' subjective beliefs about the scope of the law and their conduct rather than the objective reasonableness of their actions in light of the facts and clearly settled law. Since defendants have alleged no facts that would show that it was objectively reasonable to arrest Alford for violating the Privacy Act, their subjective beliefs are not sufficient to meet their burden under the qualified immunity standardSee DeNieva v. Reyes, 966 F.2d 480 (9th Cir.1992) (finding defendant's assertions of good faith, without facts or law showing his actions were objectively reasonable, were not sufficient to show that a reasonable officer could have believed his conduct lawful).
 
 
 [4]
 The dissent's suggestion that the statute "literally gives support" to the officer's arrest is not borne out by the text of the Privacy Act. The Act plainly prohibits only the recording of a "[p]rivate conversation, by any device electronic or otherwise ... without first obtaining the consent of all the persons engaged in the conversation," Wash. Rev.Code § 9.73.030(1)(b). A plain reading of the Washington Privacy Act does not imply that a privacy interest is created when an officer stops an individual on a public thoroughfare for a traffic violation. In fact, such a view has been rejected as "wholly without merit."Flora, 845 P.2d at 1357. In finding that the officers in Flora "could not reasonably have considered their words private" while performing a public function on a public thoroughfare, id. at 1358, the Flora court did not, as the dissent suggests, "differ from express statutory language" of the Privacy Act or narrow the scope of the statute. On the contrary, the Flora court merely complied with the intent of the statute, which "reflects a desire to protect individuals from the disclosure of any secret illegally uncovered by law enforcement," State v. Fjermestad, 114 Wash.2d 828, 791 P.2d 897, 902 (1990), and declined the state's invitation "to transform the privacy act into a sword available for use against individuals by public officers acting in their official capacity." Flora at 1358.
 
 
 GOULD, Circuit Judge, dissenting:
 
 27
 I respectfully dissent, believing that the determination of reasonableness is in the province of the jury. Indeed, I cannot help but think that Congress would shudder to see 42 U.S.C. § 1983 interpreted here to provide for liability and for the potential of a monetary remedy against the law enforcement officers, here state troopers, who quite obviously were doing their job to protect the public.
 
 
 28
 The officers whom the majority would tag with liability, despite an exculpatory jury verdict in the officers' favor, here stopped Alford for good reason because his approach to stranded vehicles, giving an appearance that he was a police officer, was ominous to say the least. After stopping and questioning Alford, following his abrupt departure from the vicinity of a stalled motorist who had been led by Alford's flashing vehicle lights to believe Alford was a police officer, the real officers arrested Alford in good faith, with their judgment seconded by a public prosecutor who was consulted.
 
 
 29
 Officer Haner and Sergeant Devenpeck reasonably believed Alford's tape recording of the traffic stop was outlawed by the Washington Privacy Act. While in the field, the officers read the statute, which literally gives support to their arrest of Alford and does not on its face carve out an exception for taping law enforcement officers.[1] Then, with a caution apparently reflecting their concern that they do the right thing, the officers contacted a prosecuting attorney to make sure that Alford's conduct indeed violated the Privacy Act. The officers did not arrest Alford on a rogue mission, nor motivated by malice, nor on a whim; instead, they provided an example of how a responsible and fair-minded officer should proceed deliberately when unfamiliar with the law a person is or may be violating; the officers called the prosecuting attorney, told him the facts, and read the statute to him. Even the prosecuting attorney mistakenly believed that the Privacy Act outlawed the covert tape recording by Alford of the officers' investigatory stop. The officers were not unreasonable in trusting the advice from their prosecuting attorney instead of relying on the assertions of Alford that case law to be found in his glove compartment exonerated him.
 
 
 30
 The majority argues that an officer, acting in good faith, could not reasonably believe that the text of the Privacy Act, on its face, supports an arrest under these circumstances, because the statute prohibits the recording of "[p]rivate conversations." The conversation that Alford recorded took place on a lonely stretch of road, at night, with nobody present except for Alford and the two officers. From an objective point of view, it could be reasonable for a jury to conclude, when viewing the facts in the light most favorable to the government, that the officers who read the literal language of the statute, who were unaware of an intermediate appellate court precedent, and who received supportive advice from the city's prosecuting attorney, had a reasonable belief that Alford's conduct violated the Privacy Act. In common sense and common parlance, one might say that two officers talking to a suspect alone in an automobile at roadside on a secluded highway, with no one else present, were engaged in a "private conversation" that could invoke the Privacy Act. The crux of the issue is whether it is a reasonable mistake of law for officers not to abide by an interpretive appellate precedent of which they were not aware.
 
 
 31
 What is most troubling to me about this case is that the majority does not give adequate heed to the fact that the district court permitted this case to go to the jury, and the jury, given instructions to which Alford did not object and that are not at issue on appeal, found no liability. In light of the district court's submission of this case to a jury that in turn gave a verdict of no liability, it is wrong for an appellate court majority to reverse the jury's decision on the incorrect theory that there is insufficient evidence to support the jury verdict.[2]
 
 
 32
 The evidence now is to be viewed in the light most favorable to the officers, as it must be after a favorable jury verdict and a motion for a new trial. There is no challenge to the jury instructions. The trial court determined that the Washington appellate court's 1992 decision in Washington v. Flora held that conversations with police officers are not "private" under the state Privacy Act, that this "rule of law was clearly established," and the district court so instructed the jury. Yet the jury still had the right to make a determination that the officers' conduct may have been reasonable if a reasonable mistake was made about the law.
 
 
 33
 The majority in substance slaps a strict liability theory on law enforcement officers who misunderstand the law of statutory interpretation. This is incorrect. The reason that the arrest turned out to be illegal here was that the broad literal text of the privacy statute had been interpreted restrictively by an intermediate state appellate court in an opinion that was not known by the officers or familiar to the prosecuting attorney.[3] It is impractical and unjust to expect that in every case every law enforcement officer will know every legal decision written by every level of the state courts about every law. To be sure, officers may not reasonably be ignorant of well-established constitutional principles, such as the need for probable cause to arrest. But here, the officers were aware they needed probable cause to arrest. Their mistake was that they interpreted a state statute literally despite a state court ruling that had narrowed it.
 
 
 34
 The majority's strict liability rule oppresses law enforcement, and relies on an unworkable legal fiction that presumes police officers must be aware of all state court of appeals decisions bearing on law enforcement. In my view, it is not correct to assume that officers necessarily can become familiar with all appellate opinions that change the contours of the law to differ from express statutory language. See Ganwich v. Knapp, 319 F.3d 1115, 1125 (9th Cir.2003) ("It may be argued that judges should not expect police officers to read United States Reports in their spare time, to study arcane constitutional law treatises, or to analyze Fourth Amendment developments with a law professor's precision. We do not expect police officers to do those things.")(emphasis added). To attach per se liability on that theory cannot be justified by the intent of Congress in passing civil rights laws or by the Supreme Court's established precedent, or ours, properly viewed. Reasonableness of government conduct is at the core of the inquiry on liability. And reasonableness is a fact question for a jury. The officers here, who read a statute before making an arrest, saw it literally covered the challenged conduct, and double-checked with a prosecuting attorney, were acting reasonably, even if it turned out the officers' belief about the law was incorrect.
 
 
 35
 The jury had plenty of evidence to conclude that the officers acted reasonably, as defined by the jury instructions to which Alford did not object. I would uphold the jury's verdict. I must respectfully dissent.
 
 
 
 Notes:
 
 
 [1]
 The pertinent portions of the Washington Privacy Act read:
 (1) Except as otherwise provided in this chapter, it shall be unlawful for any individual, partnership, corporation, association, or the state of Washington, its agencies, and political subdivisions to intercept, or record any ... [p]rivate conversation, by any device electronic or otherwise designed to record or transmit such conversation regardless how the device is powered or actuated without first obtaining the consent of all the persons engaged in the conversation.
 Rev.Code Wash. (ARCW) § 9.73.030(1)(b).
 
 
 [2]
 The majority's theory is also contrary to our precedent inThorsted v. Kelly, 858 F.2d 571, 574-75 (9th Cir.1988) ("although the ... inquiry, whether legal rights have been settled, may often best be resolved by the trial judge,... the existence of a reasonable belief that a search is lawful, viewed in light of the `settled' nature of the law, is a question for the trier of fact.") (citations omitted).
 
 
 [3]
 TheFlora opinion was rendered by the Washington intermediate Court of Appeals, Division I, whereas the officers here worked in Pierce County, within an area controlled by the Washington Court of Appeals, Division II, and Flora was not a state supreme court case controlling all intermediate appellate courts.