Anthony L. JOHNSON, Plaintiff–counter–defendant–Appellant,

v.

W.J. HAWE, Sheriff, individually and in his official capacity; John Doe 1–10; Clallam County, a municipal corporation, Defendants–Appellees,

City of Sequim, a municipal corporation; Byron Nelson, Jr., Chief, individually and in his official capacity as Police Chief of the City of Sequim and his marital community; Bill Thomas, individually and in his capacity as Mayor of Sequim, and his marital community, Defendants–counter–claimants–Appellees.

No. 03–35057.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted March 30, 2004.

Filed Aug. 31, 2004.

Amended Oct. 25, 2004.

As Corrected Nov. 8, 2004.

---

2. Hayes's motion to supplement the record is denied as moot.

R. Stuart Phillips, Poulsbo, WA, for the plaintiff-appellant.

Ray P. Cox, Forsberg & Umlauf, P.S., Seattle, WA, for the defendants-appellees.

Before CANBY, JR., WARDLAW, and GOULD, Circuit Judges.

## ORDER AND AMENDED OPINION

### ORDER

Appellee Clallam County's motion for clarification of opinion is GRANTED.

The Opinion and dissent filed August 31, 2004, slip op. 12391, and appearing at 382 F.3d 944 (9th Cir.2004) are hereby AMENDED. The Clerk shall file the attached Amended Opinion and Amended Dissent.

A majority of the panel has voted to deny the petition for panel rehearing and the petition for rehearing en banc. Judge Gould would have granted the petition.

The full court has been advised of the petition for rehearing en banc and no judge requested a vote on whether to rehear the matter en banc. Fed. R.App. P. 35.

The petition for panel rehearing and the petition for rehearing en banc are DENIED.

### OPINION

WARDLAW, Circuit Judge:

In this section 1983 action Anthony L. Johnson appeals the grant of summary judgment predicated on qualified immunity for his arrest by the City of Sequim Police Chief Byron Nelson for a violation of Washington's Privacy Act, Wash. Rev. Code § 9.73.030 (the "Privacy Act"). Because it was clearly established under Washington law at the time of the arrest that recording a police officer in the performance of his public duties was not a violation of the Privacy Act and it was unreasonable for Chief Nelson to believe otherwise, we hold that the Chief is not entitled to qualified immunity. Moreover, because Chief Nelson could not have had any reasonable expectation of privacy in the communications by others over the police radio dispatch system, which was the basis for his Privacy Act arrest of Johnson, the arrest violated Johnson's Fourth Amendment right to be free of arrest without probable cause. And because Johnson submitted evidence supporting his claim of *Monell* liability against the City, summary judgment was not warranted on any ground relied upon by the district court. We therefore reverse and remand for further proceedings.

### I

The undisputed facts show that on January 28, 2000, Johnson was videotaping several of his friends at Sequim's public skateboard park when he noticed Chief Nelson drive up to the park in his patrol vehicle. Chief Nelson, who was on duty and had come to the park to look for a missing juvenile, stopped his patrol car in the park's parking lot about seventy-five feet away from where Johnson was standing on an elevated cement ramp. From

this distance, Chief Nelson observed Johnson videotaping him as he sat in his vehicle with his driver's side window rolled down. After a short time, Johnson stopped recording Chief Nelson and approached the car. As Johnson approached, Chief Nelson's police radio "was operating" and he was "dialing [his] cellular phone" to contact dispatch to obtain a description of the runaway he was attempting to locate. Johnson resumed videotaping when he reached the rear of the car. As Johnson came around to the passenger side of the car, Chief Nelson rolled down the passenger window, deactivated his cellular phone, and asked Johnson "What do you think you're doing?" Although Johnson stopped recording Chief Nelson, he continued to point his video camera at Chief Nelson, who twice told Johnson to stop because Johnson "did not have [ ] permission to record [him] and . . . it was a violation of the law to record conversations without consent." After the second warning, Chief Nelson got out of his car and "contacted" with Johnson, physically struggling with him to obtain the video camera. With the assistance of another officer, whom he had called for backup, Chief Nelson placed Johnson under arrest and transported him to the Clallam County Jail in Port Angeles.

After Johnson had spent three days in county jail, prosecutors filed a criminal complaint against him, charging one count of recording communication without permission, in violation of the Privacy Act, and one count of resisting arrest. Prosecutors also moved for a determination of probable cause, based solely upon a declaration from Chief Nelson that Johnson videotaped him "while [he] was making telephone contact with dispatch in an attempt to verify juvenile runaway information." Although the state court found probable cause for the arrest, Johnson was released and the charges were dropped. Nearly two months later, prosecutors

again filed charges against Johnson, this time for "attempted recording communication without permission" and for resisting arrest.

On May 10, 2000, Judge Coughenour of the Clallam County District Court dismissed the charges against Johnson. Judge Coughenour found that Chief Nelson was not engaged, by cellular phone or police radio, in any conversation or communication with anyone while Johnson was recording him, and that Johnson therefore could not have "inten[ded] to record a conversation that [was not] occurring." Moreover, Judge Coughenour found that even if Chief Nelson had been involved in a communication in his vehicle, there was no expectation of privacy because he had voluntarily exposed any such communication to the public by parking his vehicle in a public place with the windows rolled down.

On June 16, 2000, Johnson filed this action pursuant to 42 U.S.C. § 1983 action against the City of Sequim, Chief Nelson, Sequim's Mayor, several Doe officers, Clallam County, and the County Sheriff, seeking a declaration that he had been arrested, incarcerated, and prosecuted in violation of his First and Fourth Amendment rights. He also sought injunctive relief, monetary damages, and attorney's fees pursuant to 42 U.S.C. § 1988(b). Chief Nelson and the other individual defendants filed counterclaims against Johnson for malicious prosecution under Wash. Rev.Code § 4.24.350(2). Ruling on cross motions for summary judgment on Johnson's claims, Magistrate Judge Arnold granted judgment for defendants and dismissed Johnson's claims. After defendants voluntarily dismissed their counterclaims, Johnson appealed.

## II

■ We review *de novo* the district court's decision to grant or deny summary

judgment. *See United States v. City of Tacoma*, 332 F.3d 574, 578 (9th Cir.2003). Viewing the evidence in the light most favorable to the nonmoving party, we determine whether any genuine issue of material fact exists and whether the district court correctly applied the law. *Id.* We review *de novo* the district court's finding of qualified immunity. *Sorrels v. McKee*, 290 F.3d 965, 969 (9th Cir.2002).

### III

■ "The elements of a section 1983 action are: (1) that the conduct complained of was committed by a person acting under color of state law; and (2) that the conduct deprived a person of rights, privileges, or immunities secured by the Constitution or laws of the United States." *Alford v. Haner*, 333 F.3d 972, 975–76 (9th Cir.2003) (citation and internal quotation marks omitted). It is undisputed that Chief Nelson was acting under color of state law when he arrested Johnson.

■ As to the second element of his section 1983 claim, Johnson asserts that Chief Nelson arrested him without probable cause, in violation of the Fourth Amendment. *See Beck v. Ohio*, 379 U.S. 89, 91, 85 S.Ct. 223, 13 L.Ed.2d 142 (1964). Probable cause exists when the arresting officer has "a reasonable belief, evaluated in light of the officer's experience and the practical considerations of everyday life, that a crime has been, is being, or is about to be committed."; *Hopkins v. City of Sierra Vista*, 931 F.2d 524, 527 (9th Cir. 1991) (citation and internal quotation marks omitted). Johnson argues that there was no reasonable basis for Chief Nelson to believe his videotaping was criminal under the Privacy Act because (1) the Act does not apply to recordings of communications that police officers make "in the course of performing their official and public duties[,]" *State v. Flora*, 68 Wash.App. 802, 845 P.2d 1355, 1357 (1992); and (2) there was no reasonable expectation of privacy in the police radio communications in any event because they were "knowingly expose[d]" to the public, *Katz v. United States*, 389 U.S. 347, 351, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967). Defendants assert they are entitled to qualified immunity.

The first inquiry in conducting a qualified immunity analysis is: "Taken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?" *Saucier v. Katz*, 533 U.S. 194, 201, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001). "In the course of determining whether a constitutional right was violated on the premises alleged, a court might find it necessary to set forth principles which will become the basis for a holding that a right is clearly established. This is the process for the law's elaboration from case to case." *Id.* "[I]f a violation could be made out ..., the next, sequential step is to ask whether the right was clearly established." *Id.* This second inquiry "must be undertaken in light of the specific context of the case," to discern whether "[t]he contours of the right [are] sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Id.* at 201, 202, 121 S.Ct. 2151. If the answer to both of these inquiries is yes, qualified immunity may still be appropriate if the officer had a "reasonable, but mistaken, belief[ ] as to the facts establishing the existence of probable cause ... [and] the legality of [his] actions." *Id.* at 206, 121 S.Ct. 2151.

### A

Defendants do not assert either that Chief Nelson had a privacy interest in his conversation with Johnson during their encounter or that he was involved in a pri-

vate cellular phone conversation while Johnson videotaped him. Thus, the sole basis for the district court's qualified immunity determination is that Chief Nelson's "communications with others on his police radio" were private, and thus he had a reasonable belief that probable cause existed to arrest Johnson for recording those communications without his consent.

■ Washington's Privacy Act provides:

(1) Except as otherwise provided in this chapter, it shall be unlawful for any individual ... to intercept, or record any:

(a) Private communication transmitted by telephone, telegraph, radio, or other device between two or more individuals between points within or without the state by any device electronic or otherwise designed to record and/or transmit said communication regardless how such device is powered or actuated, without first obtaining the consent of all the participants in the communication;

(b) Private conversation, by any device electronic or otherwise designed to record or transmit such conversation regardless how the device is powered or actuated without first obtaining the consent of all the persons engaged in the conversation.

Wash. Rev.Code § 9.73.030(1)(a)-(b). It is well-established that non-private conversations and communications are "outside the purview of the [Privacy Act,]" *State v. D.J.W.,* 76 Wash.App. 135, 882 P.2d 1199, 1202 (1994), and that "private" has its "ordinary and usual meaning" under the Act, i.e., "'belonging to one's self ... secret ... intended only for the persons involved (a conversation) ... holding a confidential relationship to something ... a secret message: a private communication ... secretly: not open or in public.'" *State v. Forrester,* 21 Wash.App. 855, 587 P.2d 179,

184 (1978) (quoting Webster's Third New International Dictionary (1969) (alterations in original)). To determine whether a conversation is private, Washington courts "consider the intent or reasonable expectations of the participants as manifested by the facts and circumstances of each case." *Id.* "A person's right to keep private his affairs including his conversation depends on whether he has a reasonable expectation of privacy at the time and under the circumstances involved." *State v. Bonilla,* 23 Wash.App. 869, 598 P.2d 783, 785–86 (1979) (citing *Jeffers v. City of Seattle,* 23 Wash.App. 301, 597 P.2d 899, 907 (1979)). This test is similar, if not identical, to the reasonable expectation of privacy test set forth for purposes of Fourth Amendment analysis in *Katz,* 389 U.S. 347, 88 S.Ct. 507. As *Katz* held,

[T]he Fourth Amendment protects people, not places. What a person knowingly exposes to the public, even in his own home or office, is not a subject of Fourth Amendment protection.... But what he seeks to preserve as private, even in an area accessible to the public, may be constitutionally protected.

*Katz,* 389 U.S. at 351, 88 S.Ct. 507 (citations omitted).

The Washington Supreme Court has determined that the Act's purpose is "to protect individuals from the disclosure of any secret illegally uncovered by law enforcement." *State v. Fjermestad,* 114 Wash.2d 828, 791 P.2d 897, 902 (1990); *see also id.* ("[T]he State's privacy act ... deliberately places the court system between the police and private citizen to protect against this type of [electronic eavesdropping].")). Accordingly, Washington courts have refused "to transform the privacy act into a sword available for use against individuals by public officers acting in their official capacity." *Flora,* 845 P.2d at 1357–58 (rejecting police officers' asser-

tion of a privacy interest under the Act in statements they made on a public thoroughfare while effectuating an arrest). In a recent section 1983 case involving the tape recording of a traffic stop, we quoted with approval the district court's jury instruction that:

> "It is not a violation of the Washington Privacy Act to tape-record a police officer in the performance of an official function on a public thoroughfare. Such conversations are not 'private' under the Privacy Act. This rule of law was clearly established by Washington Courts in 1992 in the case of *State of Washington v. Flora*."

*Alford*, 333 F.3d at 977. This instruction was correctly based upon *Flora* and a subsequent Washington Supreme Court case that recognized "a conversation on a public thoroughfare in the presence of a third party and within the sight and hearing of passersby is not private" under the Act. *State v. Clark*, 129 Wash.2d 211, 916 P.2d 384, 392 (1996) (discussing *Flora*, 845 P.2d at 1355).

▆▆▆ "Determining whether a particular conversation is private is a question of fact. However, where the pertinent facts are undisputed and reasonable minds could not differ on the subject, the issue of whether a particular conversation is private may be determined as a matter of law." *D.J.W.*, 882 P.2d at 1202 (citations omitted). The district court ruled as a matter of law that the police radio communications were private based upon Chief Nelson's reasonable expectation of privacy and the fact that he "was not engaging in [them] in a public way." We disagree for three reasons.

First, the Privacy Act does not criminalize the recording of a "police officer in the performance of an official function on a public thoroughfare." *Alford*, 333 F.3d at 977 (citing the district court's jury instruc-

tions). The district court's limitation of *Flora*'s application to communications "involv[ing] the arrest subject ... made in the presence of third parties with no expectation of privacy" was in error. *Flora*'s underlying principle is that the Privacy Act is not to be "transform[ed] ... into a sword available for use against individuals by public officers acting in their official capacity." *Flora*, 845 P.2d at 1358. The language "public officers acting in their official capacity" does not exclude any conduct other than an actual arrest, but encompasses other conduct that is public and official. *See id.* at 1357 ("The State urges us to adopt the view that public officers performing an official function on a public thoroughfare in the presence of a third party and within the sight and hearing of passersby enjoy a privacy interest which they may assert under the statute. We reject that view as wholly without merit."). In *Alford* itself, we applied *Flora* to the recording of statements made by police in public during a traffic stop and found there was not probable cause to arrest under the Privacy Act. 333 F.3d at 976, 978. It is undisputed that Johnson recorded Chief Nelson while he was on duty performing an official function in a public place. Under *Flora* and *Alford*, Johnson did not violate the Privacy Act when he recorded this official, public activity.

Second, there was no reasonable expectation of privacy in the police radio communications because Chief Nelson "knowingly expose[d]" them to the public. *Katz*, 389 U.S. at 351, 88 S.Ct. 507. It is undisputed that (1) Chief Nelson's police radio "was operating" as he sat in his police cruiser in the parking lot of a public park with his driver's side window rolled down; (2) Chief Nelson was aware that Johnson was videotaping him as Johnson approached the vehicle; (3) Chief Nelson did not roll up his window as Johnson ap-

proached; and (4) when Johnson reached the passenger side of the cruiser, Chief Nelson rolled down that window to speak to Johnson. This conduct does not reflect an intent to keep the radio communications private; it belies any assertion that the Chief expected the radio communication to remain private. With his window rolled down in a public parking lot, Chief Nelson's police radio communications were "within the ... hearing of passersby" such as Johnson and other members of the public, and thus could not be private under the Act. *State v. Clark,* 916 P.2d at 392. If Chief Nelson had wished to keep the radio communications from the public, he should have rolled up the driver's window, and refrained from rolling down a second window, where Johnson was standing next to the car with his video camera pointed inside.

Third, there is no reasonable expectation of privacy in communications over police dispatch radio in any event because those communications are knowingly exposed to the public by virtue of their transmission. For example, addressing the question "whether the participants in a conversation between 911 Central Dispatch and law enforcement or fire personnel have a reasonable expectation that their conversations are of a private nature [under the Privacy Act]," the Washington Attorney General stated in a 1988 Opinion:

> First, we understand that a large percentage of conversations between 911 Central Dispatch and law enforcement or firefighting officers is radio communication, commonly monitored by other officers and by private citizens owning devices that scan the radio frequencies used by police and fire agencies. In our opinion, the participants in a conversation that can be readily overheard and recorded by the general public do not have a reasonable expectation of privacy in their conversation.

> Second, even where a conversation is not "public" in that it is not monitored or heard by the public, it may be "public" in that the subject of the conversation is strictly of a public business nature. We assume that virtually all conversations between 911 Central Dispatch and public officers are official, public business conversations.

Op. Wash. Att'y Gen. No. 11 (1988), *available at* 1988 WL 404817, at *2–3. In a factually similar case, Oregon's intermediate appellate court similarly ruled:

> [T]he trial court erred in its conclusion that the [police radio] broadcast was not "for the use of the general public." The police had no property or privacy interest in it. It is undisputed that it was transmitted on a frequency that was accessible to the public, who could listen without subscription, payment or other hindrance. The scanner that defendant used to receive the message was for sale at K–Mart and Radio Shack stores. Although the police intended that the broadcast be for police use, the message was not coded or scrambled, and the police knew that the public could listen to it. The public could understand the content of the message without the use of special equipment, even though police officers were identified by number rather than by name. The broadcast was "for the use of the general public" within the meaning of the exception in ORS 165.540(4). Defendant committed no crime when she tape recorded the police radio broadcast.

*State v. Bichsel,* 101 Or.App. 257, 790 P.2d 1142, 1144 (1990); *cf. United States v. Basey,* 816 F.2d 980, 993 n. 21 (5th Cir. 1987) ("And, apart from specific statutory protections, there is no reasonable expectation of privacy in broadcasts over the public airwaves which are exposed to ev-

eryone in the area having a radio tuned to the same nonexclusive channel.") (citing *United States v. Hoffa*, 436 F.2d 1243, 1247 (7th Cir.1970)); *Edwards v. Bardwell*, 632 F.Supp. 584, 589 (M.D.La.), *aff'd* 808 F.2d 54 (5th Cir.1986) (stating that there is no reasonable expectation of privacy in a communication broadcast via radio). Because the communications over Chief Nelson's police radio could be commonly monitored, overheard, and recorded by other officers and private citizens owning scanning devices, there was no reasonable expectation of privacy in those communications.

Therefore we conclude that Johnson was arrested without probable cause in violation of the Fourth Amendment because his conduct was not criminal under the Act.

**B**

■ We next examine whether the contours of Johnson's Fourth Amendment right in this context were sufficiently clearly established at the time of Johnson's arrest to defeat the Chief's claim of qualified immunity. We hold that the law was sufficiently established so that Chief Nelson reasonably should have known that he had no lawful basis to arrest Johnson for violating the Privacy Act.

The principles of *Flora* and its progeny were well-established at the time of Johnson's arrest. At the very least, these cases stand for the following two propositions: (1) "public officers performing an official function on a public thoroughfare in the presence of a third party and within the sight and hearing of passersby [do not] enjoy a privacy interest which they may

assert under the statute"; and (2) the Privacy Act may not be "transform[ed] ... into a sword available for use against individuals by public officers acting in their official capacity." *Flora*, 845 P.2d at 1357–58. Any reasonable officer should have understood these rules to preclude Johnson's arrest under the circumstances. Although *Flora* involved officer statements made during an arrest, no subsequent authority limited its reach to those facts. Moreover, *Flora*'s plain language suggests a broader application sufficient to preclude Chief Nelson from arresting Johnson for recording him during the performance of his official duties in public. Moreover, in light of the many Washington cases dealing with unlawful arrests under the Privacy Act, a reasonable police officer should have been aware of the 1998 Washington Attorney General's Opinion No. 11, which determines that communications over police dispatch radio are not private. *See* 1988 WL 404817, at *2–3. Finally, even if these two points were not sufficiently clear to preclude Johnson's arrest, any reasonable officer should have known under the well-established precedent of *Katz* that there could be no reasonable expectation of privacy in the police radio transmissions which Chief Nelson knowingly exposed to the public through his open car windows. No exigent circumstances existed in this case that could justify a reasonable mistake on the part of chief Nelson. *See Saucier*, 533 U.S. at 206, 121 S.Ct. 2151.

■ Therefore defendants are not entitled to qualified immunity. The district court's entry of summary judgment on that basis is reversed.[1]

---

1. Summary judgment was also inappropriate on a second ground. A genuine issue of material fact exists as to whether Johnson recorded any conversation or communication at all. As Judge Coughenour pointed out when he dismissed the charges against Johnson, the

evidence establishes only that Chief Nelson's police radio "was operating" while Johnson videotaped him. In addition, Johnson submitted a videotape in support of his motion for summary judgment which reveals Chief Nelson sitting silently in his police cruiser

## IV

█ The district court rejected Johnson's municipal liability claim under *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978), on the basis that Johnson "had set forth no evidence to support the establishment of a policy or custom" which the Chief followed in arresting Johnson. This ruling is incorrect because Johnson submitted the declaration of law enforcement expert Alan H. Baxter. Baxter opined that the Sequim Police Department's "self-training" program, which assigned responsibility to the individual officer for keeping abreast of recent court decisions involving law enforcement, amounted to a "failure to train" Sequim police officers about enforcement of suspected violations of the Privacy Act.

Under *City of Canton v. Harris*, 489 U.S. 378, 380, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989), the Department's failure to train its officers about the Privacy Act may amount to "deliberate indifference" toward unlawful arrests under its provisions. As the Supreme Court has explained:

> [A] violation of federal rights may be a highly predictable consequence of a failure to equip law enforcement officers with specific tools to handle recurring situations. The likelihood that the situation will recur and the predictability that an officer lacking specific tools to handle

that situation will violate citizens' rights could justify a finding that policymakers' decision not to train the officer reflected "deliberate indifference" to the obvious consequence of the policymakers' choice—namely, a violation of a specific constitutional or statutory right. The high degree of predictability may also support an inference of causation—that the municipality's indifference led directly to the very consequence that was so predictable.

*Bd. of Cty. Comm'rs v. Brown*, 520 U.S. 397, 409–10, 117 S.Ct. 1382, 137 L.Ed.2d 626 (1997)(discussing *Canton*). In light of the many Washington cases addressing enforcement of the Privacy Act by public officers performing official duties, Johnson's evidence creates at least a genuine issue as to whether "self-training" in this context amounted to deliberate indifference.

In its municipal liability analysis, the district court failed to address either Johnson's "failure to train" theory of municipal liability or expert Baxter's supporting opinions. The district court also did not rule on defendants' motion to strike expert Baxter's declaration for Johnson's alleged failure to comply with his expert witness disclosure and discovery obligations under Federal Rule of Civil Procedure 26. We decline to reach these issues in the first instance, and direct the district court to address them upon remand.[2]

---

while he supposedly was engaged in conversation over his cellular phone. Viewed in the light most favorable to Johnson, this evidence suggests there was no conversation or communication taking place while Johnson videotaped Chief Nelson, and thus there was no reasonable basis to arrest him for recording a communication that did not take place.

**2.** Johnson also claims that Clallam County, with Sheriff W.J. Hawe as its policy-making

official, is liable under *Monell* for what he describes as the County's policy of "incarceration without question." On March 12, 2001, the district court granted summary judgment in favor of Clallam County and Sheriff Hawe. Because Johnson's claims against the County and Sheriff Hawe are without merit, we affirm the grant of summary judgment in their favor.

## V

The district court erroneously dismissed Johnson's state law outrage claim for failure to state a prima facie case, ruling: "[T]here is nothing unusual about the acts of the defendants as law enforcement officers, nor is there any indication that the acts viewed in a light most favorable to[Johnson] would generate severe emotional distress. No reasonable juror could find otherwise."

The dismissal was in error. "To state a claim for the tort of outrage or intentional infliction of emotional distress, a plaintiff must show '(1) extreme and outrageous conduct; (2) intentional or reckless infliction of emotional distress; and (3) actual result to the plaintiff of severe emotional distress.'" *Seaman v. Karr*, 114 Wash.App. 665, 59 P.3d 701, 710 (2002) (quoting *Birklid v. Boeing Co.*, 127 Wash.2d 853, 904 P.2d 278, 286 (1995)). The determination of whether conduct is outrageous is ordinarily a jury question, but the court must initially "determine if reasonable minds could differ on whether the conduct was so extreme as to result in liability." *Id.* In light of our holding that Chief Nelson arrested Johnson for recording "private" communications for which there was no reasonable expectation of privacy, reasonable minds could surely differ on whether that conduct amounted to more than "mere annoyance, inconvenience, or normal embarrassment," and the issue must go to a jury. *Brower v. Ackerley*, 88 Wash.App. 87, 943 P.2d 1141, 1149 (1997).

## VI

Johnson also seeks a declaration that Wash. Rev.Code § 4.24.350, the

basis for defendants' malicious prosecution counterclaims, violates the First and Fourth Amendments because it affords greater protection from unfounded lawsuits to public officials than is afforded to other citizens. Johnson's claim is moot because defendants dismissed their malicious prosecution claims and represented at oral argument that they would not pursue those claims in the future. Thus there is no actual controversy between the parties with respect to any malicious prosecution claim under § 4.24.350, and we affirm the district court's dismissal of Johnson's constitutional challenges to the statute. *See, e.g., Bernhardt v. County of Los Angeles*, 279 F.3d 862, 871 (9th Cir.2002); *Seven Words LLC v. Network Solutions*, 260 F.3d 1089, 1094–95 (9th Cir.2001).[3]

**REVERSED** in part, **AFFIRMED** in part, and **REMANDED** for further proceedings consistent with this opinion.

GOULD, Circuit Judge, dissenting:

I respectfully dissent, believing that the majority extends Washington law, as expressed in *State v. Flora*, 68 Wash.App. 802, 845 P.2d 1355 (1992), to a setting where it is inapplicable, and otherwise adopts a view of Washington law that I do not think likely would be shared by the Washington State Supreme Court. *Flora* held that an "arrest was not entitled to be private," and so police officers making an arrest "could not reasonably have considered their words private." *Id.* at 808, 845 P.2d 1355. The Privacy Act applies to private conversations only, and the Washington Court of Appeals in *Flora* was unwilling to extend the Act's protection to

---

**3.** Johnson also claims for the first time in this appeal that his arrest was an impermissible content-based restriction on his speech rights in violation of the First Amendment. Because he did not raise this claim before the district

court and there are no extraordinary circumstances which would justify deciding this claim in the first instance on appeal, we deem it waived. *See Keenan v. Allan*, 91 F.3d 1275, 1278 n. 4 (9th Cir.1996).

police officers making an arrest "on a public thoroughfare in the presence of a third party and within the sight and hearing of [a] passerby." *Id.* at 807, 845 P.2d 1355. In *Alford v. Haner*, 333 F.3d 972 (2003), a divided opinion of our court extended *Flora*'s holding to deny Privacy Act protection to police officers making an arrest on a dark and deserted highway. After *Alford*, in the federal courts within the Ninth Circuit, Washington's Privacy Act would not be recognized as offering any protection to police officers making an arrest on a public thoroughfare, period. *See id.* at 979.

If today we only held that Chief Nelson could not arrest Johnson under the Privacy Act because Johnson attempted to record communication made during an arrest on a public thoroughfare, I would join the majority, despite my dissent in *Alford*, because I am bound by our circuit's precedent. But, alas and alack, I cannot join with my colleagues, because the majority now goes further in its construction and resulting limitation of Washington's Privacy Act to deny the Act's protections to a police officer who was not executing an arrest, who was not located on a public thoroughfare, and who was not within the

presence of a third party. When taped by Johnson, Chief Nelson was sitting in his patrol car, in an empty parking lot, engaging in a conversation over the radio with dispatch. The Privacy Act's plain terms cover "individuals" engaged in "[p]rivate communication transmitted by telephone, telegraph, radio, or other device," Wash. Rev.Code § 9.73.030(1)(a) (2004), but the majority now holds that an on-the-job police officer in the State of Washington has no reasonable expectation of privacy in a conversation with dispatch over the radio. If such a broad principle is to be endorsed, it should be expressed by the Washington State Supreme Court, not merely imagined by us.[1]

A better approach than that adopted by the majority would be for us to certify to the Washington State Supreme Court the questions of (1) whether Chief Nelson's radio conversation with dispatch, while sitting in his police car in a vacant parking lot in a city park, could be considered private within the meaning of the Privacy Act; (2) and, if not, whether the controlling principle was "clearly established" under Washington law at the time Chief Nel-

---

1. The majority opines that Chief Nelson "knowingly exposed" his communications to the public because he talked while his window was down. But I do not consider this argument controlling because no one was near enough to hear as Chief Nelson communicated with dispatch. Nelson indicated a subjective intent to keep his communication private when Johnson came near the police car: He informed Johnson that he did not consent to the recording and asked Johnson to cease recording. *Cf. State v. Townsend*, 147 Wash.2d 666, 674, 57 P.3d 255 (2002) (en banc) (finding the requisite subjective intent to keep a conversation private met where a person asked for the conversation to remain private). In any event, the subjective intent of the parties is but one factor a court should consider in determining whether a communication is private within the meaning of the Privacy Act. *Id.* at 673–74, 57 P.3d 255

(including among the factors the subjective intention of the parties, the duration and subject matter of the communication, the location of the communication, and the presence of potential third parties).

The majority cites a 1988 Attorney General Opinion for the proposition that conversations between 911 Central Dispatch and law enforcement are not private because they can be readily monitored and are official, public business. While this argument has some logical force, this 1988 Attorney General Opinion is not the current law of the State of Washington. The Washington State Supreme Court, in its most recent Privacy Act opinion, in 2002, has instructed that the "mere possibility that interception of the communication is technologically feasible does not render public a communication that is otherwise private." *Townsend*, 147 Wash.2d at 674, 57 P.3d 255.

son charged Johnson with a Privacy Act violation. The answers to these questions are dispositive of this case, and in my view have yet to be resolved by the Washington State Supreme Court.[2] Under these circumstances, the State of Washington has a procedure permitting us to certify questions for resolution by the Washington State Supreme Court. Wash. Rev.Code § 2.60.020 (2004) (allowing certification of a question to the Washington State Supreme Court when "in the opinion of any federal court ... it is necessary to ascertain the local law of [Washington] in order to dispose of such proceeding and the local law has not been clearly determined").

We are not making the most of our opportunity to cooperate as judicial neighbors, and we are not in tune with the requirements of judicial federalism, when we declare state law whose contours have not been firmly set by the state's own supreme court, without first asking the state supreme court for clarification. The reach of the Privacy Act here is important to the State of Washington and to its citizens, as our holding has the potential to limit the use of police communications with dispatch to cases where the communications may readily be displayed openly to the public eye and ear. Certification is particularly appropriate when a legal issue's resolution can impact state law enforcement. *See Ventura Group Ventures v. Ventura Port Dist.*, 179 F.3d 840, 843 (9th Cir.1999).

My concern that it would be preferable if we certified the key questions is intensified by the unusual procedural context of § 1983 claims, which may be brought in state or federal court. *Martinez v. Cali-*

*fornia*, 444 U.S. 277, 283–84, 100 S.Ct. 553, 62 L.Ed.2d 481 (1980) (holding that federal courts do not have exclusive jurisdiction over § 1983 claims, and pointing out that state courts have concurrent jurisdiction to hear such claims). Those who assert claims against police officers for false arrest under the Privacy Act frequently make a § 1983 claim. The majority's decision today will bind federal courts within our circuit, whereas the Washington courts, in my view, might reach a different conclusion. The Washington State Supreme Court will be able to be the final arbiter of the meaning of the Privacy Act as it relates to on-the-job police officers, if it is presented with and rules on the pertinent issues. Yet, a rational plaintiff will not elect to seek an answer from the state courts when we have declared a view of Washington state law so friendly to plaintiffs arrested in Washington under the Privacy Act after taping a police conversation. The probable effect of the majority's decision is that "the many Washington cases addressing enforcement of the Privacy Act by public officers performing official duties," Majority Opinion at 686, will be brought before and decided by a federal court in the Ninth Circuit, perhaps leaving the Washington State Supreme Court without an opportunity directly to review or correct our interpretation of Washington state law. It is better to recognize that the certification procedure saves "time, energy, and resources and helps build a cooperative judicial federalism." *Lehman Bros. v. Schein*, 416 U.S. 386, 392, 94 S.Ct. 1741, 40 L.Ed.2d 215 (1974).

I also disagree with the majority's analysis of Chief Nelson's claim of qualified immunity. It was not unreasonable, in my

---

**2.** While the Washington State Supreme Court recently reiterated the factors that a court may consider under Washington law in determining if a communication is private, *Townsend*, 147 Wash.2d at 673, 57 P.3d 255, the Washington State Supreme Court has never addressed whether on-the-job police officers have a reasonable expectation of privacy in communications with dispatch.

view, for Chief Nelson to believe that he had a lawful basis to arrest Johnson for violating the Privacy Act. No decision to date in the Washington state courts, nor in our interpretations of Washington law, has ever held that the Privacy Act fails to offer its protections to an on-the-job police officer, communicating via radio to dispatch, in a parked squad car, outside the presence of third parties. Before today, that is.

Chief Nelson's on-the-scene determination that he had cause to arrest Johnson under the Privacy Act was at first approved by a judge of the Washington State District Court who, after the fact, found that probable cause existed for arresting and holding Johnson. It seems odd to say that Chief Nelson violated a clearly established right of Johnson when prior decisions limited the Privacy Act's reach only by excluding "public officers performing an official function on a public thoroughfare in the presence of a third party and within the sight and hearing of [a] passerby," *Flora*, 68 Wash.App. at 807, 845 P.2d 1355, not involved here, and when the first state court to review the arrest agreed that Chief Nelson's arrest of Johnson was warranted by probable cause under Washington law.

The only "official function" held by state precedent in *Flora* and our precedent in *Alford* to be non-private was an arrest. But Chief Nelson was not arresting anyone when Johnson taped him. Further, the places where the arrests in *Flora* and in *Alford* occurred were each public thoroughfares, whereas Chief Nelson's encounter with Johnson was in the parking lot of a public city park, which might conceivably be a point of distinction. And Chief Nelson's communication with dispatch was not made in the presence of third persons. When Johnson came within Nelson's sight and hearing, he told Johnson to cease re-

cording his private conversation. Neither the Washington appellate court's decision in *Flora*, nor our extension of *Flora* in *Alford*, addressed the applicability of the Privacy Act in the circumstances presented to Chief Nelson.

I also disagree with the majority's conclusion regarding municipal liability. Johnson's law enforcement expert opined that the Sequim Police Department's policy of assigning responsibility to individual officers of keeping abreast of recent court decisions related to law enforcement amounted to a failure to train Sequim police officers about enforcing suspected violations of the Privacy Act. Even taking this declaration as true, nothing in the record shows that this failure to train amounted to deliberate indifference or that it caused the alleged violation of Johnson's constitutional rights. *See City of Canton v. Harris*, 489 U.S. 378, 389–90, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989) (finding that a failure to train will represent city policy only where "the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers of the city can reasonably be said to have been deliberately indifferent to the need"). No evidence indicates that Chief Nelson was unaware of prior Privacy Act case law, or that if he was unaware of such law, a contrary City policy would have led to a different result under the circumstances presented by Johnson's encounter with Nelson. Indeed, given the ambiguity surrounding the extent to which prior decisions of the Privacy Act limited its scope with respect to law enforcement officers, it is hard to say whether any amount of training about state law precedents on Privacy Act enforcement would have prevented this arrest. The state law as declared by the Washington State Supreme Court, or by intermediate appellate courts as in *Flora*, had not set the bounds of the Priva-

cy Act for police officers who were not engaged in making arrests on a public street or highway. There is just no basis, indeed there is no just basis, for *Monell* liability to be visited upon the City of Sequim, and the city's summary judgment should not have been disturbed.[3]

Finally, I disagree with the majority's conclusion reinstating Johnson's state law tort claim against Chief Nelson for "outrage." The Washington State Supreme Court has limited the scope of the tort of outrage to the most extreme conduct. *Birklid v. Boeing Co.*, 127 Wash.2d 853, 867, 904 P.2d 278 (1995) (limiting the tort of outrage to only those acts that are "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community."). Here, an initial hearing by a Washington state court judge found probable cause to arrest and detain Johnson. And even though a different state court judge later determined that probable cause was lacking, one cannot properly characterize Chief Nelson's actions as "beyond all possible bounds of decency" or "atrocious," even crediting all of the Johnson's evidence and giving all reasonable inferences to Johnson.

The Washington Supreme Court has often been willing to answer certified questions when tendered by us. *See, e.g., Keystone Land & Devel. Co. v. Xerox Corp.*, 353 F.3d 1093, 1094 (9th Cir.2003); *Parents Involved in Community Schs. v. Seattle Sch. Dist.*, 294 F.3d 1085, 1086–87 (9th Cir.2002); *Broad v. Mannesmann Anlagenbau AG*, 196 F.3d 1075, 1076 (9th Cir.1999). By continuing to extend prior federal and state case law to limit the reach of Washington's Privacy Act, we do a disservice to federalism and run the risk of supplanting state law with our own views, when the dispositive Washington Privacy Act questions can be more appropriately resolved by the Washington State Supreme Court in a definitive manner consistent with its view of state law.

I respectfully dissent.

---

**3.** I agree with the majority's statement in its footnote 2 that Johnson's claims against the County and Sheriff Hawe have no merit, and that the district court's summary judgment for them should be affirmed.