139 P.3d 1078 (2006)
Steven A. LEWIS, Petitioner,
v.
STATE of Washington, DEPARTMENT OF LICENSING, Respondent.
State of Washington, Respondent,
v.
Kenneth D. Higgins, Petitioner.
City of Auburn, Respondent,
v.
Edward Kelly, Petitioner.
City of Auburn, Respondent,
v.
Andrew DeWaele, Petitioner.
Nos. 76824-2, 77110-3.
Supreme Court of Washington, En Banc.
Argued February 14, 2006.
Decided August 3, 2006.
*1079 Ryan Boyd Robertson, Attorney at Law, Burien, Matthew Jameson Rusnak, Law Offices of Matthew J Rusnak, Auburn, Andrea King Robertson, Francisco A. Duarte, Fox Bowman Duarte, Bellevue, Dawn Marie Bettinger, The Law Offices of James Egan, Seattle, for Petitioner/Appellant.
Masako Kanazawa, Attorney General's Office, Licensing Division, Susan K. Storey, King County Prosecutor's Office, Seattle, Susan Sackett DanPullo, Office of the Attorney General, Olympia, Daniel Brian Heid, City of Auburn, Auburn, Jay Douglas Geck, Office of the Attorney General, Olympia, for Appellee/Respondent.
Nanacy Lynn Talner, Aaron Hugh Caplan, ACLU of Washington, Seattle, for Amicus Curiae American Civil Liberties Union.
FAIRHURST, J.
¶ 1 In these four consolidated cases, the petitioners (drivers), who were all charged with driving under the influence (DUI), challenge two Court of Appeals decisions holding that recordings made during their traffic stops were admissible. The drivers argue that the police officers who stopped them did not properly inform the drivers that the officers were recording their conversations. We review whether Washington's privacy act, chapter 9.73 RCW, protects conversations that occur between police officers and detainees during traffic stops and, if so, what remedy should be applied when a police officer *1080 fails to properly inform a detainee that the officer is recording his or her conversation.
¶ 2 Although we conclude that conversations between traffic stop detainees and police officers are not private conversations, we hold that the privacy act requires that officers inform detainees that the officers are recording their conversation. Because three of the four officers failed to properly inform the drivers in these cases, we hold that those officers violated the privacy act and that the proper remedy for those violations is the exclusion of the recordings. We remand Lewis, Kelly, and DeWaele for hearings without consideration of the improper recordings. We also remand Higgins for a hearing but hold that the recording in that case is admissible because the officer properly informed Higgins that he was being recorded.

I. FACTUAL AND PROCEDURAL HISTORY

A. Lewis v. State

¶ 3 On December 12, 2002, at approximately 1:00 a.m., Auburn Police Officer Douglas Faini witnessed Steven A. Lewis' truck travel in excess of the speed limit and turn without signaling.[1] After the truck turned into a parking lot, the officer saw Lewis throw a beer can out of the window before he stopped the truck. Officer Faini, who was in uniform and driving a patrol car, approached Lewis' truck. A video camera mounted in the officer's patrol car made a sound and video recording of their conversation.
¶ 4 Officer Faini asked Lewis several questions, to which Lewis did not respond. The officer noted that "Lewis' eyes appeared bloodshot and watery" and that he could "smell the odor of intoxicating liquor emanating from the vehicle." Administrative Record (AR) at 12. Officer Faini called for additional officers to assist him with Lewis, who would not exit his truck. Another officer used a taser weapon on Lewis in order to get him out of the truck. The officers handcuffed Lewis and placed him in the patrol car. Officer Faini arrested Lewis for DUI and "refusal to cooperate." AR at 12-13. At the police station, Officer Faini read Lewis the statutory implied consent warnings, but Lewis refused to take a breath test.[2]
¶ 5 Following this incident, the Department of Licensing (DOL) revoked Lewis' driver's license for two years. Lewis contested the revocation at a DOL administrative hearing. At the hearing, Lewis offered the video and audio recording of the traffic stop into evidence. Lewis then moved to suppress Officer Faini's police report because the officer had failed to adequately inform Lewis that the officer was recording the traffic stop as required by Washington's privacy act.
¶ 6 The parties dispute whether Officer Faini did advise Lewis that he was being recorded. Officer Faini's police report does not state that he advised Lewis that he was being recorded. The recording of the incident is garbled at the point where Officer Faini first approached Lewis' truck. Although the parties agree that the officer said the word "recorded," the parties dispute whether the word was part of a warning that Lewis was being recorded. Pet'r's Suppl. Br. (Lewis) at 15.
¶ 7 The hearing officer denied the suppression motion and upheld Lewis' license revocation, finding that the State did not seek to admit the audio and video evidence and that the officer had informed Lewis that he was recording their conversation. Lewis appealed DOL's decision to King County Superior Court, which reversed the revocation based on a finding that substantial evidence did not support that the officer informed Lewis of the recording. The court held that this failure violated the privacy act and suppressed "any video and audio recording, as well [as] *1081 any observations made by the arresting officer." Clerk's Papers (CP) (Lewis) (hereinafter LCP) at 70. The State appealed the decision to the Court of Appeals, which reversed the superior court, holding that traffic stop conversations with a police officer were not private and could be recorded. Lewis v. State, 125 Wash.App. 666, 681-82, 105 P.3d 1029 (2005).

B. State v. Higgins

¶ 8 On the evening of October 20, 2001, Washington State Patrol Trooper Cheek began to follow Kenneth D. Higgins' car after witnesses reported him driving erratically. After observing sustained weaving, Trooper Cheek stopped Higgins' car. A video camera mounted in the trooper's patrol car made a sound and video recording of their conversation.
¶ 9 After approaching the driver's side window of Higgins' car, Trooper Cheek told Higgins that he was being "recorded." CP (Higgins) (hereinafter HCP) at 20. Higgins responded to the trooper's questions but refused to participate in a field sobriety test. Trooper Cheek arrested Higgins for DUI. After placing Higgins in the patrol car, Trooper Cheek read Higgins his Miranda[3] rights and stated that he was reminding him that he was being "recorded." HCP at 3.
¶ 10 At a pretrial hearing in King County District Court, Higgins moved to "suppress the videotape and all evidence gathered during the use of the videotape" under the privacy act. HCP at 5. Higgins argued that the privacy act requires police officers to specifically inform traffic stop detainees that "a sound recording is being made," rather than merely a "recording." HCP at 8. The district court agreed and ordered the suppression of the recording and all other evidence related to Higgins' traffic stop.
¶ 11 The State appealed to the King County Superior Court, which reversed the district court's suppression order and held that traffic stop conversations are not private, or alternatively, that Trooper Cheek adequately informed Higgins that he was being recorded. Higgins appealed the decision to the Court of Appeals, which affirmed the superior court, and concluded that an officer need not use the word "sound" when advising a detainee that he is being recorded. Lewis, 125 Wash.App. at 684, 105 P.3d 1029.[4]

C. City of Auburn v. Kelly

¶ 12 On November 15, 2002, at approximately 11:30 p.m., a uniformed Auburn Police Officer witnessed Edward Kelly's car fail to yield and nearly collide with another car after entering traffic. The officer pulled in behind Kelly and activated his lights. Kelly continued driving for several blocks and then stopped in the far lane of a busy road. A video camera mounted in the officer's patrol car made an audio and video recording of their conversation.
¶ 13 The officer observed that Kelly had a passenger in his car and requested back-up. After approaching the car, the officer noted that Kelly's eyes were bloodshot and watery. The officer also smelled a strong and obvious odor of intoxicants. The officer asked Kelly if he had been drinking and Kelly replied that he had had a few drinks. The officer asked if Kelly's ability to drive was impaired by the alcohol, and he replied that it was not. Kelly agreed to participate in several field sobriety tests but performed poorly. The officer advised Kelly of his Miranda rights and arrested him for DUI. At the station, the officer read Kelly the implied consent warnings, but Kelly refused to sign them or take a breath test.
¶ 14 At a pretrial hearing in the Auburn Municipal Court, the city stipulated that the officer did not warn Kelly that he was being recorded and that the recording was not admissible. Defense counsel moved to suppress all evidence related to the videotape, including the officer's observations. The municipal court granted the motion, dismissed the evidence, and granted a subsequent motion to dismiss the city's case. The King County Superior Court affirmed the suppression of the evidence and the dismissal of the city's case. The Court of Appeals reversed, *1082 holding that the conversations were not private for purposes of the privacy act. City of Auburn v. Kelly, 127 Wash.App. 54, 61, 111 P.3d 1213 (2005).

D. City of Auburn v. DeWaele

¶ 15 On March 30, 2002, at approximately 2:00 a.m., Officer Faini of the Auburn Police Department witnessed Andrew DeWaele's truck traveling at a high rate of speed. The officer paced the truck for approximately one mile and noted that the truck was traveling consistently at a rate of over 80 miles per hour, when the posted speed limit was 60 miles per hour. The officer also noticed the truck drifting back and forth between lanes, often driving down the center of the two lanes. Officer Faini stopped the truck as it approached an off-ramp. As in Lewis, a video camera mounted in the officer's patrol car made an audio and video recording of their conversation. However, in this case, it is undisputed that Officer Faini did not advise DeWaele that he was being recorded. While talking to DeWaele, the officer noticed a strong odor of intoxicants coming from inside the vehicle.
¶ 16 Officer Faini asked DeWaele if he had been drinking and DeWaele replied that he had consumed two beers. The officer observed that DeWaele's speech was slurred and his eyes were bloodshot and watery. DeWaele agreed to take a field sobriety test and the officer noted that DeWaele performed poorly. Officer Faini arrested DeWaele for DUI and advised him of his Miranda rights. At the police station, DeWaele signed the implied consent warnings but refused a breath test.
¶ 17 At a pretrial hearing in the Auburn Municipal Court, the city stipulated that the officer did not warn DeWaele that he was being recorded and that the recording was not admissible. Defense counsel moved to suppress all evidence related to the period of the recording. The municipal court granted the motion to suppress and dismissed the city's case. The King County Superior Court affirmed the suppression of the evidence and the dismissal. The Court of Appeals reversed, holding that the conversations were not private for purposes of the privacy act. Kelly, 127 Wash.App. at 61, 111 P.3d 1213.[5]
¶ 18 Lewis, Higgins, Kelly, and DeWaele petitioned this court for review. We granted their petitions and consolidated the two Court of Appeals cases. Lewis v. State, 155 Wash.2d 1014, 124 P.3d 304 (2005); City of Auburn v. Kelly, 155 Wash.2d 1015, 124 P.3d 304 (2005).

II. ISSUES
A. Whether conversations between police officers and detainees at a traffic stop are private for the purposes of Washington's privacy act.
B. Whether an officer's failure to inform a detainee that he or she is being recorded violates the privacy act.
C. Whether the proper remedy for an officer's failure to inform a detainee about the recording is dismissal of all evidence related to the traffic stop.

III. ANALYSIS

A. Whether conversations between police officers and detainees at a traffic stop are private for the purposes of Washington's privacy act
¶ 19 Washington's privacy act, chapter 9.73 RCW, places great value on the privacy of communications. State v. Christensen, 153 Wash.2d 186, 199-200, 102 P.3d 789 (2004). The act "tips the balance in favor of individual privacy at the expense of law enforcement's ability to gather evidence without a warrant." Id. at 199, 102 P.3d 789. Under RCW 9.73.030, the privacy act prohibits the recording of private conversations without the consent of all parties to the conversation. RCW 9.73.030 states:
(1) Except as otherwise provided in this chapter, it shall be unlawful for any individual . . . or the state of Washington, its agencies, and political subdivisions to intercept, or record any:
. . . .
(b) Private conversation, by any device electronic or otherwise designed to record *1083 or transmit such conversation regardless how the device is powered or actuated without first obtaining the consent of all the persons engaged in the conversation.
. . . .
(3) Where consent by all parties is needed pursuant to this chapter, consent shall be considered obtained whenever one party has announced to all other parties engaged in the communication or conversation, in any reasonably effective manner, that such communication or conversation is about to be recorded or transmitted: PROVIDED, That if the conversation is to be recorded that said announcement shall also be recorded.
The statute clearly prohibits only the recording of private conversations.
¶ 20 Whether a conversation is private is a question of fact, unless the facts are undisputed and reasonable minds could not differ, in which case it is a question of law. State v. Clark, 129 Wash.2d 211, 225, 916 P.2d 384 (1996) (citing Kadoranian v. Bellingham Police Dep't, 119 Wash.2d 178, 190, 829 P.2d 1061 (1992)). In Kadoranian, this court adopted the Webster's Third New International Dictionary (1969) definition of "private" as "`belonging to one's self . . . secret . . . intended only for the persons involved (a conversation) . . . holding a confidential relationship to something . . . a secret message: a private communication . . . secretly: not open or in public."' 119 Wash.2d at 190, 829 P.2d 1061 (quoting State v. Forrester, 21 Wash.App. 855, 861, 587 P.2d 179 (1978)). When determining whether a particular conversation is private, we look to the subjective intentions of the parties to the conversation. Clark, 129 Wash.2d at 225, 916 P.2d 384. However, because most defendants would contend that their conversations are private, we also look to factors bearing on the reasonable expectations and intent of the parties. Id. In Clark, we identified three factors bearing on the reasonable expectations and intent of the parties (1) duration and subject matter of the conversation, (2) location of conversation and presence or potential presence of a third party, and (3) role of the nonconsenting party and his or her relationship to the consenting party. Id. at 225-27, 916 P.2d 384.
¶ 21 The State[6] maintains that traffic stop detainees do not have a reasonable expectation of privacy in their conversations with police officers. An analysis of the factors in Clark supports this conclusion. Under the first factor, the recorded conversations in these cases were essentially brief business conversations with uniformed police officers. Under the second factor, the conversations between the police officers and the detainees occurred in public, in several cases along busy roads. Additionally, in the case of Lewis and Kelly, third parties were present for part or all of the conversations because the police officers called back-up, and in the case of Kelly, a passenger was in his car. Finally, under the third factor, it is not persuasive that the nonconsenting parties to these conversations, the drivers, would expect the officers to keep their conversations secret, when the drivers would reasonably expect that the officers would file reports and potentially would testify at hearings about the incidents.
¶ 22 The drivers contend that traffic stop conversations are private because they are involuntary.[7] However, the drivers offer no authority for the proposition that an involuntary conversation is a private one. Rather, the correct inquiry is whether the parties intend the conversation to be secret, in light of the factors from Clark. The drivers fail to establish that the parties intend the conversation *1084 to be secret in the context of a traffic stop.
¶ 23 Finally, as the State notes, this court and the Court of Appeals have repeatedly held that conversations with police officers are not private. See, e.g., Clark, 129 Wash.2d at 226, 916 P.2d 384 (no reasonable expectation of privacy in a conversation with an undercover police officer when it "takes place at a meeting where one who attended could reveal what transpired to others."); State v. Bonilla, 23 Wash.App. 869, 873, 598 P.2d 783 (1979) ("It would strain reason for Bonilla to claim he expected his conversations with the police dispatcher to remain purely between the two of them."); State v. Flora, 68 Wash.App. 802, 808, 845 P.2d 1355 (1992) ("Because the exchange [between a police officer and an arrestee during an arrest] was not private, its recording [by the arrestee] could not violate RCW 9.73.030 which applies to private conversations only."); see also Alford v. Haner, 333 F.3d 972, 978 (9th Cir. 2003), rev'd on other grounds, Devenpeck v. Alford, 543 U.S. 146, 125 S.Ct. 588, 160 L.Ed.2d 537 (2004) (noting that State v. Flora established that a traffic stop was not a private encounter for purposes of the privacy act); Johnson v. Hawe, 388 F.3d 676, 682-83 (9th Cir. 2004) (holding that an individual who videotaped a police officer during an arrest did not violate RCW 9.73.030 because the officer had no reasonable expectation of privacy in his communications with others over his police radio).
¶ 24 In light of the definition of "private," our analysis of the Clark factors, and these prior decisions, we hold that traffic stop conversations are not private for purposes of the privacy act.

B. Whether an officer's failure to inform a detainee that he or she is being recorded violates the privacy act

1. RCW 9.73.090(1)(c) requires officers to inform traffic stop detainees that their conversations are being recorded
¶ 25 While RCW 9.73.030 clearly applies only to private communications and conversations, the proviso at issue in this case, RCW 9.73.090(1)(c), does not clearly state whether it creates an exemption only for private conversations that otherwise could not be recorded under the privacy act or whether it also applies to conversations that are not private. RCW 9.73.090(1) provides, in relevant part:
The provisions of RCW 9.73.030 through 9.73.080 shall not apply to police ... personnel in the following instances:
. . . .
(c) Sound recordings that correspond to video images recorded by video cameras mounted in law enforcement vehicles. All law enforcement officers wearing a sound recording device that makes recordings corresponding to videos recorded by video cameras mounted in law enforcement vehicles must be in uniform. A sound recording device which makes a recording pursuant to this subsection (1)(c) may only be operated simultaneously with the video camera. No sound recording device may be intentionally turned off by the law enforcement officer during the operation of the video camera.
. . . .
A law enforcement officer shall inform any person being recorded by sound under this subsection (1)(c) that a sound recording is being made and the statement so informing the person shall be included in the sound recording, except that the law enforcement officer is not required to inform the person being recorded if the person is being recorded under exigent circumstances. A law enforcement officer is not required to inform a person being recorded by video under this subsection (1)(c) that the person is being recorded by video.
¶ 26 The drivers contend that this proviso implies that traffic stop conversations are usually private but that under RCW 9.73.090(1)(c), recordings of these otherwise private conversations made by recorders mounted in police vehicles do not violate the privacy act when accompanied by a proper warning. By contrast, the State contends that traffic stop conversations are never private and that RCW 9.73.090(1)(c) is a safe harbor provision that allows officers to record truly private conversations if they first *1085 warn the parties involved. Amicus curiae American Civil Liberties Union of Washington (ACLU) proposes a third interpretation of the proviso, which is that RCW 9.73.090(1)(c) creates a separate set of requirements for recording traffic stop conversations that police officers must follow, regardless of whether the conversations are private. We agree with the ACLU's interpretation.[8]
¶ 27 There is some evidence that indicates that proponents of RCW 9.73.090(1)(c) in the legislature thought it was necessary to add the proviso in order to enable officers to record what were otherwise private conversations. For example, during the Senate Judiciary Committee debates, the sponsor of the bill, Representative Delvin stated that "we found out there was a quirk in the law that that didn't allow the recordingthe actual sound recording of the videobut the video was allowed. And so this bill addresses that issue." Authorizing sound recordings without prior consent that correspond to video recordings from cameras mounted in law enforcement vehicles: Hearing on S.H.B. 2903 Before the S. Comm. on the Judiciary, 56th Leg., Reg. Sess. (2000) (statement of Rep. Delvin, sponsor).
¶ 28 However, other evidence indicates that the legislature realized that no expectation of privacy exists in a traffic stop conversation. For example, Sheriff Larry Taylor, the initiator of the bill, testified that he contacted the ACLU and that a representative of the ACLU told him that "there's no expectation of privacy on the traffic stop" and that the ACLU did not oppose his bill. Id. (statement of Sheriff Larry Taylor, bill initiator). This understanding was reflected in the house bill report, which stated:
Currently when an officer makes a traffic stop, the video recorder in the police car may only take video images of the encounter. This bill will allow a sound recording also to be made in this situation. The intent of this bill is not to invade privacyit doesn't authorize recordings in homes, in businesses, or of phone conversations. People pulled over for a traffic stop have a lower expectation of privacy than situations involving wiretaps. Allowing sound recordings in this context will help ensure officer safety, provide an important evidentiary tool, and create a checks and balances system for officer conduct.
H.B. REP. on Substitute H.B. 2903, 56th Leg., Reg. Sess. (Wash.2000). As a result, legislative history does not conclusively indicate that the legislature believed that traffic stop conversations were private.
¶ 29 The drivers in these cases argue that the existence of the proviso in RCW 9.73.090(1)(c) clearly demonstrates that the legislature considered traffic stop conversations to be private conversations. The drivers rely largely on this court's decision in State v. Wanrow, 88 Wash.2d 221, 559 P.2d 548 (1977), in which we held that the existence of a proviso limiting the recording of calls to police and fire stations implied that these calls were otherwise private under former RCW 9.73.030 (1967). Id. at 228, 559 P.2d 548. At that time, former RCW 9.73.090(1) (1970) stated that "[t]he provisions of RCW 9.73.030 through 9.73.080 shall not apply to police and fire personnel in the following instances: (1) Recording incoming telephone calls to police and fire stations for the purpose and only the purpose of verifying the accuracy of reception of emergency calls." (Emphasis added.) The Wanrow court concluded that telephone calls to police and fire stations must be private communications under former RCW 9.73.030(1) because the legislature specifically allowed recording only for verifying the accuracy of reception of the calls under former RCW 9.73.090(1). "There would be no purpose in enacting this exclusion unless the legislature believed such communications were otherwise within the *1086 scope of the section." Wanrow, 88 Wash.2d at 228, 559 P.2d 548.
¶ 30 However, the drivers' reliance on Wanrow is misplaced for two reasons. First, the "for the purpose and only the purpose of" language in former RCW 9.73.090 limits the exemption from the privacy act for calls to police stations to a particular circumstance. This restrictive language supports the Wanrow court's interpretation that, other than recording for the purpose of verifying reception, calls to police dispatchers were private. By contrast, current RCW 9.73.090(1)(c) does not limit the exemption from the privacy act for recording traffic stops. Instead, it creates a blanket exemption for all traffic stop recordings and establishes certain procedures that police officers must follow in making those recordings. As a result, we cannot draw the same conclusion that we did in Wanrowthat traffic stop conversations are otherwise private under the privacy act.
¶ 31 Second, following the Wanrow decision, the legislature amended former RCW 9.73.090(1) and removed the language "for the purpose and only for the purpose of verifying the accuracy of reception of emergency calls." Former RCW 9.73.090(1) (1970), amended by LAWS OF 1977, 1st Ex.Sess., ch. 363, § 3. Since this 1977 legislation, calls to police dispatchers have been lawfully recorded and admissible. See, e.g., State v. Johnson, 104 Wash.2d 179, 180, 703 P.2d 1052 (1985). This amendment indicates that the legislature did not intend the exemption of a particular type of communication under RCW 9.73.090 to imply that the communication is otherwise private for purposes of the privacy act. As a result, neither legislative history nor an analysis of the structure of the privacy act based on Wanrow definitively establishes that the legislature considered traffic stop conversations to be private conversations. As a result, we stand by our previous conclusion that there is no expectation of privacy in a conversation between an officer and a driver at a traffic stop.
¶ 32 The State argues that because Wanrow is distinguishable and conversations with a police officer are not private, this court should interpret RCW 9.73.090(1)(c) as merely a safe harbor provision. The State argues that the proviso exists to protect other, truly private conversations from recording without consent, such as a driver's conversation with his passenger or on his cellular phone.
¶ 33 However, this interpretation is inconsistent with the plain language of the statute. This court should attempt to ascertain legislative intent when interpreting a statute. State v. Grays Harbor County, 98 Wash.2d 606, 607, 656 P.2d 1084 (1983). Where the language of a statute is plain and unambiguous, the court ascertains the statute's meaning from the statute itself. Id. The language of RCW 9.73.090 clearly and unambiguously mandates that police officers "shall" advise "any" persons that they are being recorded. The plain language of the statute indicates that police officers must always warn traffic stop detainees before making a sound recording. Additionally, the same factors that indicate that a driver does not have a reasonable expectation of privacy with an officer during a traffic stop conversation also indicate there is no reasonable expectation of privacy in other conversations that same driver might have in the presence of the officer during a traffic stop, such as with his passenger or with another party over a cellular phone. Moreover, if a police officer accidentally recorded a truly private conversation during a traffic stop, RCW 9.73.030 would protect that private conversation. The State's safe harbor argument does not suggest a plausible interpretation for the existence of RCW 9.73.090(1)(c).
¶ 34 As discussed above, we conclude that traffic stop conversations are not private. The language of the proviso in RCW 9.73.090(1)(c) does not make those conversations private by implication. However, we also conclude that the language of RCW 9.73.090(1)(c) directs officers to inform all traffic stop detainees that they are being recorded, not just those having private conversations. Therefore, we conclude that police officers must strictly comply with RCW 9.73.090(1)(c), even though recording those traffic stop conversations does not also violate RCW 9.73.030.
¶ 35 This court has previously held that officers were required to strictly comply with a provision of RCW 9.73.090, even though the *1087 conversations involved clearly were not private. In State v. Cunningham, 93 Wash.2d 823, 613 P.2d 1139 (1980), this court considered the interrelation of the custodial interrogation proviso, former 9.73.090(2) (1977), recodified as RCW 9.73.090(1)(b), and the prohibition on recording private conversations in former RCW 9.73.030 (1977). Former RCW 9.73.090(2) required officers to warn arrested persons that the officers were recording the interrogation and required that the warning be included on the recording itself. In Cunningham, the State argued that it was of no consequence whether the recorded statements were private because the arrested persons gave their consent to the recording for the purposes of former RCW 9.73.030. 93 Wash.2d at 828, 613 P.2d 1139. As a result, the State argued that the police need not have complied with former RCW 9.73.090(2).
¶ 36 This court rejected the State's arguments and recognized that former RCW 9.73.090(2) required strict compliance because the statute
is specifically aimed at the specialized activity of police taking recorded statements from arrested persons, as distinguished from the general public. While mere consent may be wholly sufficient to protect members of the general public whose statements have been recorded under noncustodial conditions, such is not true when dealing with persons whose statements have been taken while under custodial arrest. In the latter situation, consent alone has been deemed insufficient. The legislature has authorized police to make sound recordings of statements made by arrested persons only under carefully circumscribed conditions.
Cunningham, 93 Wash.2d at 829, 613 P.2d 1139. As the ACLU notes, the State's position in this case precisely mirrors the argument this court already rejected in Cunningham. In this case, the State argues that the traffic stop conversations were not private, so the police need not have complied with RCW 9.73.090(1)(c). However, as this court made clear in Cunningham, the legislature enacted the provisions in current RCW 9.73.090(1)(b) and (c) so that police officers would comply with those provisions. Any other interpretation would allow officers to record traffic stop conversations without warning the drivers, in direct conflict with the express mandate of the statute.
¶ 37 A comparison of the custodial interrogation proviso in current RCW 9.73.090(1)(b) with the traffic stop proviso in RCW 9.73.090(1)(c) provides guidance for our resolution of this case. A person in custody undergoing interrogation clearly would not have any expectation that his conversation with the police would be private. Regardless of that fact, the legislature established procedures for recording interrogations with which the police must comply. Likewise, regardless of whether traffic stop conversations are private, police must comply with the procedures the legislature established for recording those conversations in RCW 9.73.090(1)(c).[9]
¶ 38 As a result, we hold that officers must strictly comply with the provisions of RCW 9.73.090(1)(c) when recording traffic stop conversations regardless of whether recording those conversations would also violate RCW 9.73.030. In Kelly and DeWaele, the State conceded that the officers did not inform the drivers that they were recording their conversations. As a result, we hold that the officers in those cases violated RCW 9.73.090(1)(c). Next, we must determine whether the officers in Lewis and Higgins also violated RCW 9.73.090(1)(c) by failing to properly inform the drivers in those cases that they were recording their conversations.

2. The officer did not properly inform Lewis about the recording
¶ 39 The State continues to assert on appeal that substantial evidence supports the hearing officer's finding that Officer Faini advised Lewis that he was being recorded. The superior court disagreed and ruled that *1088 substantial evidence did not support the finding that a warning occurred. The Court of Appeals did not reach the issue because it held that no violation occurred under the privacy act. Lewis, 125 Wash.App. at 671, 105 P.3d 1029.
¶ 40 On appeal, a court may only review the DOL hearing officer's factual determinations in order to decide if they are supported by substantial evidence. RCW 46.20.308(9); see Clement v. Dep't of Licensing, 109 Wash.App. 371, 374 n.6, 35 P.3d 1171 (2001). The substantial evidence standard is deferential and requires the appellate court to view all evidence and inferences in the light most favorable to the prevailing party. State v. Pierce County, 65 Wash.App. 614, 618, 829 P.2d 217 (1992). Although an appellate court may not reweigh evidence, the court may determine if the evidence is sufficient to persuade a fair minded person of the truth of the declared premise. Dep't of Licensing v. Sheeks, 47 Wash.App. 65, 69, 734 P.2d 24 (1987).
¶ 41 Here, substantial evidence does not support the finding that Officer Faini warned Lewis he was being recorded. The hearing officer denied Lewis' suppression motion based, in part, on a finding that the police report and the audio recording provided sufficient evidence of the warning. However, at the administrative hearing, the hearing officer stated that he believed that the police report mentioned that the officer informed Lewis about the recording and defense counsel corrected him. The hearing officer then admitted his error by stating, "Yes, there is nothing in the report, I don't think, about it as I'm just briefly looking through it." LCP at 28. As a result, this court should conclude that the hearing officer erred when he found that the police report provided sufficient evidence that the officer warned Lewis.
¶ 42 As the only remaining evidence, the audio recording does not sufficiently prove that Officer Faini warned Lewis that he was being recorded. At the DOL hearing, Lewis' counsel acknowledged that the recording could give the impression that the officer warned Lewis but disputed that a warning actually occurred.
I initially thought he was told he was being recorded too, just because we're given a flat screen of what occurs. After looking at it further and having a couple other attorneys observe it, it was clear that the information that he was conveying was not to my client. It was to another officer via a radio or something.
LCP at 29. The State originally transcribed the relevant portion of the audio tape as Officer Faini stating, "Why did you just throw the beer, the beer can out, huh? (inaudible statement)you're being recorded." LCP at 60. However, on appeal, the State changed the transcription to "Why did you just throw the beer, the beer can out, huh? (inaudible statement) -recorded." Br. of Appellant DOL at 30.
¶ 43 Even after drawing all inferences in favor of the State, the strongest conclusion that a court could draw from this evidence is that Officer Faini said the word "recorded." RCW 9.73.090(1)(c) requires police officers to warn individuals that they are recording their conversation and that "the statement so informing the person shall be included in the sound recording." The evidence in this case does not meet this requirement. Thus, we hold that substantial evidence does not support the finding that Officer Faini adequately warned Lewis.

3. The trooper properly informed Higgins about the recording
¶ 44 Higgins argues that he did not receive a proper warning because the trooper only informed Higgins that he was being "recorded" and did not specify that he was making a sound recording. RCW 9.73.090(1)(c) requires that an officer inform "any person being recorded by sound under this subsection (1)(c) that a sound recording is being made and that the statement so informing the person shall be included in the sound recording." RCW 9.73.090(1)(c). However, the statute further specifies that "the law enforcement officer is not required to inform a person being recorded by video" that the person is being recorded by video. Id.
¶ 45 The State argues that RCW 9.73.090(1)(c) specifies that officers must *1089 warn about sound recording because the statute does not regulate video recordings. Legislative history supports the interpretation that the word "sound" is present in the statute only to distinguish sound recordings from video recordings. This court may consider sequential drafts of a bill in order to help determine the legislature's intent. State v. Martin, 94 Wash.2d 1, 19, 614 P.2d 164 (1980). The original version of Substitute H.B. 2903, which added RCW 9.73.090(1)(c) to the privacy act, did not include the requirement that officers inform traffic stop detainees about the recordings. SUBSTITUTE H.B. 2903, 56th Leg., Reg. Sess. (Wash.2000). The House subsequently adopted an amendment to the bill that provided that officers must warn any individuals being "recorded" that a "recording" was being made, but did not specifically refer to "sound" recordings. Id. The final version of the bill added the language that officers need not warn individuals about video recordings and rewrote the warning provision to apply only to "sound" recordings. Id. This history indicates that the legislature added the word "sound" to the statute in order to distinguish sound recordings, which require a warning, from video recordings, which do not require a warning.
¶ 46 This interpretation is consistent with the plain language of the statute. RCW 9.73.090(1)(c) does not mandate that an officer must use specific language when informing a traffic stop detainee that the officer is recording their conversation. If the legislature had intended that officers use specific words when informing drivers of recordings, it could have specified the words to use. Moreover, Higgins never argued that he did not receive proper notice that the trooper was making a sound recording of their conversation. He merely argues that the recording is inadmissible based on a technicalitya technicality that is not specifically required by the statute.
¶ 47 We agree with the Court of Appeals that the trooper's statement that he was recording his conversation with Higgins adequately informed Higgins that the trooper was making a sound recording. Thus, we hold that Trooper Cheek complied with the requirements of RCW 9.73.090(1)(c) and properly informed Higgins that he was recording their conversation. As a result, we remand Higgins' case for a hearing, which may include the admissible recording of his traffic stop.

C. Whether the proper remedy for an officer's failure to inform a detainee about the recording is the dismissal of all evidence related to the traffic stop
¶ 48 The drivers argue that because their conversations were private and recorded in violation of RCW 9.73.030, all evidence related to the traffic stop should have been excluded under RCW 9.73.050. RCW 9.73.050 provides that:
Any information obtained in violation of RCW 9.73.030 . . . shall be inadmissible in any civil or criminal case in all courts of general or limited jurisdiction in this state, except with the permission of the person whose rights have been violated in an action brought for damages under the provisions of RCW 9.73.030 through 9.73.080, or in a criminal action in which the defendant is charged with a crime, the commission of which would jeopardize national security.
In State v. Fjermestad, 114 Wash.2d 828, 836, 791 P.2d 897 (1990), this court interpreted the remedy in RCW 9.73.050 as rendering inadmissible any evidence obtained at the same time as the improper recording of a private conversation, including simultaneous visual observations and assertive gestures. However, this remedy only applies to private conversations under RCW 9.73.030.
¶ 49 In Fjermestad, this court held that undercover officers using "body wires" without court authorization were knowingly intercepting private conversation in violation of the privacy act. 114 Wash.2d at 829, 836, 791 P.2d 897. In determining what remedy to apply to this violation, the court considered RCW 9.73.050 and noted that the statute applied to "`[a]ny information obtained in violation of RCW 9.73.030.'" Id. at 836, 791 P.2d 897 (quoting RCW 9.73.050). "As we read the statute, it expresses a legislative intent to safeguard the private conversations of citizens from dissemination in any way. The statute reflects a desire to protect individuals *1090 from the disclosure of any secret illegally uncovered. . . ." Fjermestad, 114 Wash.2d at 836, 791 P.2d 897 (emphasis added). Even though the improper wiretapping in Fjermestad violated RCW 9.73.090(2), it also violated RCW 9.73.030 because it captured private conversations.
¶ 50 Here, the improper recordings did not violate RCW 9.73.030 because they captured traffic stop conversations, which are not private conversations. Thus, the remedy from RCW 9.73.050 and Fjermestad does not apply. We conclude that the violations of RCW 9.73.090(1)(c) in these cases do not require the exclusion of other evidence acquired at the same time as the improper recordings, such as the officer's simultaneous visual observations.
¶ 51 Instead, we look to the remedy we employed in Cunningham, where we determined that recordings that did not strictly conform to former RCW 9.73.090(2) were simply inadmissible. 93 Wash.2d at 831, 613 P.2d 1139. We apply that remedy here and hold that because the officers failed to comply with RCW 9.73.090(1)(c), the recordings in Lewis, Kelly, and DeWaele are inadmissible. We conclude that this remedy applies to both the sound and video tracks of the recordings because RCW 9.73.090(1)(c) prohibits a police officer from turning off the sound recording capabilities of a video recorder. Thus, RCW 9.73.090(1)(c) does not support the admission of the video track without the sound track once a sound recording has been made.
¶ 52 In Lewis, we have a factual situation where Lewis, not the State, offered the recording as an exhibit at his revocation hearing and then moved to suppress the recording and all other evidence acquired at the same time as the recording. While the hearing officer noted that the State did not seek to introduce the recording, the officer also denied Lewis' motion to suppress the recording after admitting the recording as an exhibit. From the hearing officer's findings of fact, conclusions of law, and final order, we cannot tell whether the officer relied on the improper recording once admitted. We remand for a new hearing in Lewis without the improper recording. We also remand Kelly and DeWaele for hearings without the improper recordings because the Auburn Municipal Court dismissed those cases prior to hearing.

IV. CONCLUSION
¶ 53 Although the drivers in these cases did not have a reasonable expectation of privacy in the traffic stop conversations they had with the officers who stopped them, RCW 9.73.090(1)(c) required the officers to warn the drivers that the officers were recording those conversations and to ensure that the recording included that warning. In every case besides the traffic stop of Higgins the record does not include an adequate warning, and we hold that the officers violated RCW 9.73.090(1)(c). We also hold that the proper remedy for these violations is the exclusion of the entire recording, both sound and video, from the license revocation hearings of Lewis, DeWaele, and Kelly.
¶ 54 As a result, we affirm the Court of Appeals' reversal of the district court in Higgins and remand for a hearing, in which the recording will be admissible. We reverse the Court of Appeals and hold that the recordings from Lewis, Kelly, and DeWaele are not admissible but that other evidence accumulated at the same time as the recordings, including the officers' perceptions, is admissible. Finally, we remand for hearings in Lewis, Kelly, and DeWaele. Thus, we affirm the Court of Appeals in part and reverse in part.
Concurring: ALEXANDER C.J.; C. JOHNSON, MADSEN, SANDERS, BRIDGE, CHAMBERS, OWENS, J.M. JOHNSON, JJ.
NOTES
[1] With the exception of the dispute over whether Officer Faini properly advised Lewis that he was recording their conversation, which is discussed below, the parties do not dispute the facts of this case or the other three cases.
[2] Under Washington's implied consent statute, a driver impliedly consents to a breath test if the arresting officer has reasonable grounds to believe the driver was DUI. RCW 46.20.308(1). The Department of Licensing (DOL) must presume that a driver refusing to take a breath test was DUI, and DOL must revoke the driver's license. RCW 46.20.308(6), (7).
[3] Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).
[4] The Court of Appeals consolidated State v. Higgins with Lewis v. State.
[5] The Court of Appeals consolidated City of Auburn v. DeWaele with City of Auburn v. Kelly.
[6] Unless otherwise noted, "the State" collectively refers to all three respondents: the State of Washington (King County Prosecuting Attorney) (hereinafter KCPA), DOL, and the City of Auburn.
[7] The State argues that this is a new argument on appeal and that the drivers conceded that their conversations were not private at the Court of Appeals. Suppl. Br. of Resp't DOL at 7. Although the Court of Appeals did assert that Lewis and Higgins conceded that their conversations were not private for the purposes of RCW 9.73.030, the record does not reflect this. Lewis, 125 Wash.App. at 677, 105 P.3d 1029. As discussed below, all four drivers have continuously argued that traffic stop conversations are private for the purposes of the privacy act. As a result, we consider the drivers' argument. See RAP 2.5(a).
[8] The ACLU also asserts that because a violation of RCW 9.73.090(1)(c) is independent from a violation of RCW 9.73.030, this court need not reach the issue of whether traffic stop conversations are private under RCW 9.73.030. However, as we discuss below, this court applies different remedies for improper recordings of private conversations under RCW 9.73.030 and improper recordings of conversations that are not private. Thus, our previous determination that traffic stop conversations are not private guides our remedy for the violations of RCW 9.73.090(1)(c) in these cases.
[9] The KCPA asserts that this court should also review whether the custodial interrogation proviso of RCW 9.73.090(1)(b) overrides the application of the traffic stop proviso in RCW 9.73.090(1)(c) in these cases. The trial courts did not consider the admissibility of the recordings based on the custodial interrogation proviso. Thus, we decline to consider the issue.