IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION ONE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 80768-4-I |
| | ) | |
| Respondent, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| DAVID DARRELL SYKES, | ) | UNPUBLISHED OPINION |
| | ) | |
| Appellant. | ) | |
| | ) | |

VERELLEN, J. — The Washington Privacy Act, RCW 9.73.090(1)(b), contains several procedural requirements a police officer must satisfy before an arrested person's recorded statement is admissible. Erroneously admitting a recording is prejudicial when there is a reasonable probability the recording changed the outcome at trial.

David Sykes was charged with two counts of third degree assault for intentionally spitting on two police officers. The jury convicted him on only one of the charges. Sykes requests a retrial because the court admitted two recordings of officers speaking with him following his arrest. One recording was not within the scope of RCW 9.73.090(1)(b) because the officer was trying only to inform Sykes of his right to counsel and not attempting to take a statement or gather any information from him. Even if the trial court should not have admitted the other

recording, there is no reasonable probability it impacted the outcome because properly admitted evidence provided the same information.

Sykes requested a lesser included instruction for attempted assault. A court does not abuse its discretion by refusing to give an instruction on a lesser included offense when the evidence does not show only the lesser offense occurred. Because the only witnesses to Sykes's assault testified his spit actually landed on the officers and the evidence does not show only the lesser offense occurred, the court did not abuse its discretion.

Sykes contends he received ineffective assistance of counsel because his trial counsel did not convince the court to exclude the recordings or to give the lesser-included offense instruction. Because these alleged errors were either not erroneous or not prejudicial, Sykes fails to show defense counsel was ineffective.

Therefore, we affirm.

## FACTS

Tanna Cornely was waiting alone at a bus stop on South Jackson Street in Seattle around 9:30 one night when a man began leering at her. As the bus approached, she demanded to know what he was looking at. While the bus was stopping, the man punched her in the face. Cornely fled onto the bus, traveled for four or five blocks, and disembarked. She called the police, and Officer Gregory Baker responded.

Officer Baker spoke with Cornely, and she described the man who punched her. While they talked, Cornely pointed at the profile of a man on a passing bus and said he was the person who assaulted her. Officer Baker got in his car and

followed the bus to its next stop. He entered the bus and saw the man depart from the bus's rear doors. Officer Baker followed the man, David Sykes, off the bus, told him to put his hands behind his back, and then handcuffed him. Officer Baker requested assistance to detain Sykes so he could get Cornely to see if she could identify him.

Officers Gregory Soss and Jayms Harris arrived to assist. Sykes remained handcuffed and quickly became belligerent and aggressive, cursing, insulting, and threatening to kill the officers. Sykes also began spitting. Sykes's behavior made the officers fear he would try to assault them, so they held him chest-first against an adjacent wall. Sykes continued spitting, swearing, yelling, and threatening the officers. As Officer Harris restrained Sykes and waited for Officer Baker to return with Cornely, Sykes's spit hit him in the cheek and neck.

Officer Baker returned with Cornely five to ten minutes later, and she identified Sykes as the man who punched her. The officers arrested Sykes for punching Cornely and detained him in the back of Officer Soss's patrol car with the window slightly open. Officer Harris recorded audio of his unsuccessful attempt to speak with Sykes through the window to learn his name and other basic information.[1]

Officer Soss called Officer Kevin Davis, their sergeant, to assist. Officer Davis tried twice to inform Sykes of his CrR 3.1 right to counsel. Officer Harris

---

[1] The record is unclear about the type of recording device Officer Harris used, except that neither his body camera nor his mounted in-car recording system were used. He may have used a cell phone.

3

recorded audio of Officer Davis's first attempt. In this attempt, Officer Davis opened the door of the patrol car and tried to talk to Sykes, and stopped almost immediately because Sykes spit at him. Officer Davis avoided being spat upon because he quickly closed the door. Officer Davis opened the door a second time and attempted to speak with Sykes but stopped after Sykes spat in his face. The second attempt was not recorded.

The State charged Sykes with one count of fourth degree assault for punching Cornely, one count of third degree assault for spitting on Officer Harris, and one count of third degree assault for spitting on Officer Davis. Pretrial, defense counsel moved to exclude the recording of Officer Harris speaking with Sykes, arguing it did not comply with the Washington Privacy Act, RCW 9.73.090. Defense counsel did not move to exclude the recording of Officer Davis. The court denied the motion, concluding the Harris recording was admissible because Officer Harris attempted to comply with RCW 9.73.090(1)(b).

During trial, defense counsel asked that the court provide the jury with instructions on the lesser included offense of attempted third degree assault. The court reserved ruling until hearing all the evidence and denied the request. The State played the two minute recording of Officer Harris speaking with Sykes and the nineteen second recording of Officer Davis's attempt to speak with Sykes. The jury found Sykes not guilty of assaulting Cornely, found him guilty of assaulting Officer Davis, and could not reach a verdict on the charge of assaulting Officer Harris. The State subsequently dismissed the charge for allegedly assaulting Officer Harris.

Sykes appeals.

ANALYSIS

We agree with Sykes that any issues from the charge for assaulting Officer Harris are moot because the State has dismissed that charge. The only conviction before us for review is from Sykes's assault of Officer Davis.

I. Recordings

Sykes argues retrial is required because he was prejudiced by the court erroneously admitting the recordings of Officer Harris and Officer Davis speaking with him.[2] He contends the recordings were inadmissible because they did not comply with the procedural recording requirements in RCW 9.73.090(1)(b) of the Washington Privacy Act. The State argues RCW 9.73.090(1)(b) is inapplicable because its scope is limited to custodial interrogations.

---

[2] The State contends we should not review the Davis recording, exhibit 7, because Sykes did not object to admitting it. Sykes challenged the Harris recording, exhibit 8, but declined to challenge the Davis recording. RAP 2.5(a) gives us the discretion to consider errors not raised before the trial court. State v. Malone, 193 Wn. App. 762, 765, 376 P.3d 443 (2016) (citing State v. Russell, 171 Wn.2d 118, 122, 249 P.3d 604 (2011); RAP 2.5(a)). Because the legal questions presented by both recordings are the same and Sykes challenged the Harris recording before the trial court on the same grounds raised here for both recordings, we will consider both recordings. See Lunsford v. Saberhagen Holdings, Inc., 139 Wn. App. 334, 338, 160 P.3d 1089 (2007) ("But if an issue raised for the first time on appeal is 'arguably related' to issues raised in the trial court, a court may exercise its discretion to consider newly-articulated theories for the first time on appeal.") (citing State Farm Mut. Auto. Ins. Co. v. Amirpanahi, 50 Wn. App. 869, 872-73, 751 P.2d 329 (1988)); see also RAP 1.2(a) (rules of appellate procedure should be interpreted to "facilitate the decision of cases on the merits").

5

We review a court's legal conclusions on a motion to suppress de novo.[3]

We also review questions of statutory interpretation de novo,[4] interpreting statutes

to uphold the intent of the legislature.[5]

RCW 9.73.030 establishes broadly applicable privacy protections for the

general public, and RCW 9.73.090(1)(b) creates an exception applicable only to a

person under arrest.[6]  RCW 9.73.090(1)(b) provides:

> (1) The provisions of RCW 9.73.030 through 9.73.080 shall not apply to police, fire, emergency medical service, emergency communication center, and poison center personnel in the following instances:
>
> . . . .
>
> (b) Video and/or sound recordings may be made of arrested persons by police officers responsible for making arrests or holding persons in custody before their first appearance in court. Such video and/or sound recordings shall conform strictly to the following:
>
> (i) The arrested person shall be informed that such recording is being made and the statement so informing him or her shall be included in the recording;

---

[3] State v. Roden, 179 Wn.2d 893, 898, 321 P.3d 1183 (2014) (citing State v. Schultz, 170 Wn.2d 746, 753, 248 P.3d 484 (2011)).

[4] State v. Gray, 174 Wn.2d 920, 926, 280 P.3d 1110 (2012) (citing State v. Breazeale, 144 Wn.2d 829, 837, 31 P.3d 1155 (2001)).

[5] Lewis v. State, Dep't of Licensing, 157 Wn.2d 446, 465, 139 P.3d 1078 (2006) (citing State v. Grays Harbor County, 98 Wn.2d 606, 607, 656 P.2d 1084 (1983)).

[6] State v. Cunningham, 93 Wn.2d 823, 828, 613 P.2d 1139 (1980). Although Cunningham refers to RCW 9.73.090(2) as controlling the nature and means of obtaining consent, id. at 830, the opinion notes that RCW 9.73.090(2) had recently been renumbered as the provision at issue here, RCW 9.73.090(1)(b), id. at 828 (citing LAWS OF 1977, 1st Ex. Sess., ch. 363, § 3).

(ii) The recording shall commence with an indication of the time of the beginning thereof and terminate with an indication of the time thereof;

(iii) At the commencement of the recording the arrested person shall be fully informed of his or her constitutional rights, and such statements informing him or her shall be included in the recording;

(iv) The recordings shall only be used for valid police or court activities.

We do not have to decide the exact limits on the application of RCW 9.73.090(1)(b). Our Supreme Court has observed it is "specifically aimed at the specialized activity of police taking recorded statements from arrested persons."[7] There is no authority it applies to an officer's speech or mere conduct by an arrested person.

Here, the Davis recording is only 19 seconds long and does not show any effort to take a recorded statement from Sykes:

Officer: Sir, you have the right to an attorney. If you are not able to afford one—

Sykes: Man, kill yourself.

Officer: Okay. Do you understand you have the right to an attorney?

Sykes: Kill your—fuck off a bridge, man. [spitting sound] (indiscernible).

Officer: Now, he got me there. Yeah. Yeah.[8]

---

[7] Cunningham, 93 Wn.2d at 829 (emphasis added).

[8] Report of Proceedings (RP) (Oct. 24, 2019) at 461.

7

Officer Davis was trying to inform Sykes of his right to counsel, not make a factual inquiry or gather information of any kind. Officer Davis was recorded giving warnings when Sykes interrupted with nonresponsive answers and spitting. The Davis recording is beyond the scope of RCW 9.73.090(1)(b).

The Harris recording is just over two minutes and contains Officer Harris's efforts to gather information from Sykes. Assuming without deciding that the recording was subject to RCW 9.73.090(1)(b) and was admitted in error, Sykes fails to show the error was prejudicial.

The parties agree the nonconstitutional harmless error standard applies. An error was harmless "'unless, within reasonable probabilities, had the error not occurred, the outcome of the trial would have been materially affected.'"[9] To evaluate this, we consider "whether there is a reasonable probability that the outcome of the trial would have been different without the inadmissible evidence."[10]

Sykes argues admitting the Harris recording prejudiced him because it depicted his "raw . . . anger, accompanied by aggressive language and an apparent spitting noise."[11] But Officers Harris, Davis, and Soss all provided the same information in their testimony. They testified to the specific threats, swearing, name-calling, and other aggressive and angry statements made by

---

[9] State v. Rupe, 101 Wn.2d 664, 682, 683 P.2d 571 (1984) (quoting Cunningham, 93 Wn.2d at 831).

[10] State v. Gower, 179 Wn.2d 851, 857, 321 P.3d 1178 (2014) (citing State v. Gresham, 173 Wn.2d 405, 433-34, 269 P.3d 207 (2012)).

[11] Appellant's Br. at 26.

Sykes. They also specifically testified to his spitting behavior. And Sykes's angry

and aggressive language was also contained in the admissible recording of Officer

Davis's attempt to inform Sykes of his right to counsel. Although Sykes contends

the jury convicted him of assaulting Officer Davis because of the Harris recording,

we are not convinced that there is a reasonable probability the jury would have

reached a different verdict on the assault charge when the officers' testimony and

the properly admitted Davis recording provided the same information. Because

there is no reasonable probability that the outcome of the trial on the Davis count

was affected by admitting the Harris recording, Sykes fails to demonstrate

prejudice from its admission.[12]

## II. Jury Instructions on Attempted Assault

Sykes argues the court should have instructed the jury on attempted third

degree assault. The court reserved ruling on the proposed instruction until both

parties rested and then declined to provide the instruction because the evidence

did not support it. Because the court declined to provide the instruction based

upon the evidence presented, we review the decision for abuse of discretion.[13]

A defendant who requests an attempt instruction as a lesser included

offense of the crime is entitled to it when "(1) each element of the lesser offense is

a necessary element of the offense charged (legal prong) and (2) the evidence,

viewed most favorably to the defendant, supports an inference that only the lesser

---

[12] Gower, 179 Wn.2d at 857; Rupe, 101 Wn.2d at 682.

[13] State v. Condon, 182 Wn.2d 307, 315-16, 343 P.3d 357 (2015) (citing State v. Walker, 136 Wn.2d 767, 771-72, 966 P.2d 883 (1998)).

9

crime was committed (factual prong)."[14]  The factual prong is met when the evidence "'would permit a jury to rationally find a defendant guilty of the lesser offense and acquit him of the greater.'"[15]  Thus, the question is whether there was evidence that only the lesser offense of attempted assault occurred.

Washington recognizes three forms of assault: attempting to inflict bodily harm on another, unlawfully touching another with criminal intent, and placing another in apprehension of physical harm.[16]  Sykes was charged with assault for spitting on Officers Davis and Harris, which are charges of assault for unlawful touching with criminal intent.  The State presented three witnesses to both alleged assaults: Officers Soss, Harris, and Davis.  All three testified Sykes was spitting and that Officers Harris and Davis were actually hit by his spit.  Officers Harris and Davis both testified Sykes intentionally spat at them.  Sykes rested without presenting any witnesses.  Because there was no evidence that only the lesser

---

[14] State v. Hahn, 174 Wn.2d 126, 129, 271 P.3d 892 (2012) (citing State v. Workman, 90 Wn.2d 443, 447-48, 584 P.2d 382 (1978)).  Sykes argues the trial court applied the wrong legal standard to analyze his request because "the Workman test is not the correct test when an attempt instruction is requested." Appellant's Br. at 34.  Sykes's argument is not persuasive because attempted assault can be a lesser included offense to the crime of assault by unlawful touching, State v. Hall, 104 Wn. App. 56, 64, 14 P.3d 884 (2000), and the Workman test is used to determine if a lesser included offense instruction is warranted, State v. Fernandez-Medina, 141 Wn.2d 448, 454, 6 P.3d 1150 (2000) (citing Workman, 90 Wn.2d at 447-48).

[15] Fernandez-Medina, 141 Wn.2d at 456 (quoting State v. Warden, 133 Wn.2d 559, 563, 947 P.2d 708 (1997)).

[16] Hahn, 174 Wn.2d at 129 (citing State v. Wilson, 125 Wn.2d 212, 218, 883 P.2d 320 (1994)).

included offense of an attempted touching occurred,[17] the trial court did not abuse its discretion by refusing to give the lesser included instruction.

III. Ineffective Assistance of Counsel

Sykes argues he received ineffective assistance of counsel because, first, defense counsel did not object to the Davis recording or convince the court to exclude both recordings and, second, because defense counsel did not convince the trial court to provide an instruction on attempted assault.

We review claims of ineffective assistance of counsel de novo.[18] The defendant bears the burden of proving ineffective assistance of counsel.[19] First, the defendant must prove his counsel's performance was deficient.[20] Second, the defendant must prove he was prejudiced by the deficient performance.[21] "'Prejudice exists if there is a reasonable probability that but for counsel's deficient

---

[17] To the extent Sykes argues he merely attempted to assault the officers by spitting on them but did not complete the crime because it was not offensive, the only explicit evidence about the offensiveness of spitting was from Officer Harris, who testified it was offensive.

[18] State v. Shaver, 116 Wn. App. 375, 382, 65 P.3d 688 (2003) (citing State v. S.M., 100 Wn. App. 401, 409, 996 P.2d 1111 (2000)).

[19] State v. Grier, 171 Wn.2d 17, 33, 246 P.3d 1260 (2011) (quoting Strickland v. Washington, 466 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed.2d 674 (1984)).

[20] Id. at 32 (quoting Strickland, 466 U.S. at 687).

[21] Id. at 33 (quoting Strickland, 466 U.S. at 687).

performance, the outcome of the proceedings would have been different.'"[22]
Failure to prove deficiency or prejudice ends the inquiry.[23]

As discussed, the Davis recording was properly admitted, admitting the Harris recording was not prejudicial, and the court did not err by refusing to give the lesser included instruction. Sykes fails to show his defense counsel was ineffective.

Therefore, we affirm.

_____
Verellen, J.

WE CONCUR:

_____          _____
Mann, C.J.                        Appelwick, J.

---

[22] State v. Lopez, 190 Wn.2d 104, 116, 410 P.3d 1117 (2018) (internal quotation marks omitted) (quoting State v. Estes, 188 Wn.2d 450, 458, 395 P.3d 1045 (2017)).

[23] State v. Woods, 198 Wn. App. 453, 461, 393 P.3d 886 (2017) (citing State v. Hendrickson, 129 Wn.2d 61, 78, 917 P.2d 563 (1996)).